A00A1061. R. A. SIEGEL COMPANY et al. v. BOWEN et al.

(539 SE2d 873)

BLACKBURN, Presiding Judge.

In this action for the wrongful death of Anita Boise, the R. A. Siegel Company and Donald Bell (hereafter collectively defendants) appeal the jury's verdict in favor of Samantha Bowen and Marie Diaz (hereafter collectively plaintiffs). Defendants contend that the trial court erred by: (1) directing a verdict against defendants; (2) excluding the testimony of their expert regarding the condition of the car after the accident; (3) excluding evidence that the driver of the car had ingested marijuana prior to the collision; and (4) admitting photographs from the autopsy of the decedent. For the reasons discussed below, we affirm.

1. Defendants contend the trial court erred by directing a verdict in favor of plaintiffs.

> A directed verdict is appropriate where there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. OCGA § 9-11-50 (a). A grant of directed verdict can be upheld only where we determine that *all* the evidence demands that verdict. This requires a de novo review.

(Punctuation omitted; emphasis in original.) *Hulsey v. Dept. of Transp.*[1]

With particular regard to "rear-end" collision cases, our Supreme Court has admonished that liability is generally a jury question, depending upon a "factual resolution of the issues of diligence, negligence, and proximate cause." *Atlanta Coca-Cola Bottling Co. v. Jones.*[2] While a directed verdict in such cases is rare, liability can be summarily decided in the proper circumstances. "Of course, where there is no dispute as to the facts, and they amount to a confession of liability as a matter of law, a directed verdict is warranted." Id. at 450. In the present case, the indisputable facts establish liability because the only evidence was that Bell's tractor-trailer overrode the car, and Bell had no explanation for the accident.

> The evidence having shown that the plaintiff was completely free of negligence and defendant's testimony having revealed no legal reason or excuse for his failure to avoid colliding with the rear of the plaintiff's automobile, the trial judge did not err in directing a verdict for the plaintiff on the question of liability.

(Punctuation omitted.) *Johnson v. Curenton.*[3]

The evidence at trial showed that in the early morning hours of October 9, 1996, Anita Boise was a passenger in a car driven by her husband Mark Boise. The Boises, en route to Florida, were traveling on Interstate 75 near Calhoun, Georgia. The Boises were driving with their headlights on down a straight stretch of highway in clear weather. Bell, an employee of the R. A. Siegel Company, was driving a tractor-trailer and following the Boises in the same lane. Experts at trial testified that the tractor-trailer overrode the Boises' Mercedes,

---

[1] *Hulsey v. Dept. of Transp.*, 230 Ga. App. 763 (498 SE2d 122) (1998).
[2] *Atlanta Coca-Cola Bottling Co. v. Jones*, 236 Ga. 448, 451 (224 SE2d 25) (1976).
[3] *Johnson v. Curenton*, 127 Ga. App. 687 (195 SE2d 279) (1972).

driving onto its back. Still connected to the car, the tractor-trailer pushed the Mercedes down the highway, off the road, down an embankment, and into a tree. After the car hit the tree, the tractor-trailer rolled over its trunk and roof. The Boises died in the collision.

Bell testified that he did not know how the collision occurred. He never saw the car until the impact on the highway, when he saw a flash on the right side of the cab. Another trucker following Bell did not see the Mercedes and did not see Bell's truck swerve. Despite defendants' contentions, there was no evidence that the Mercedes pulled in front of the tractor-trailer or otherwise contributed to the cause of the collision. At the close of evidence, the trial court directed a verdict on liability in favor of plaintiffs. The jury awarded $1,392,750 to plaintiffs.

There was no conflict in the evidence. Bell's tractor-trailer overrode the car and, still attached to the car, pushed it into the tree. Bell had no explanation for his failure to see the Mercedes on the straight highway in clear weather. This evidence allows no other conclusion but that Bell was negligent. As the evidence demanded a verdict in favor of plaintiffs, the trial court did not err by directing a verdict. *Atlanta Coca-Cola Bottling Co.*, supra; *Johnson*, supra; *Hulsey*, supra.

2. Defendants argue that the trial court erred by precluding the testimony of its expert regarding possible causes of the accident deduced from an examination of the wrecked car as a sanction for the spoliation of the Mercedes. See *Sharpnack v. Hoffinger Indus.*[4] (" 'spoliation' is the destruction or the significant . . . alteration of evidence"). Although defendants contend that the sanction imposed here was overly harsh, we disagree.

A trial court has the power to control the behavior of those appearing before it to ensure its ability to conduct a fair trial. See OCGA § 15-1-3; *Atlanta Newspapers v. Grimes*.[5] The power to do so is exercised at the discretion of the judge, and this Court will not interfere with that power unless it has been abused. Id.; *Young v. Champion*.[6]

Shortly after the accident, St. Paul Fire & Marine, the insurer for defendants, through its agent Carson-Brooks, Inc., had the Mercedes stored with Sadisco Salvage. In March 1997, Carson-Brooks instructed Sadisco that the car was not to be sold without the permission of either defendants' attorneys or St. Paul. The subject wrongful death action was filed in June 1997.

Experts retained by plaintiffs and an expert retained by defend-

---

[4] *Sharpnack v. Hoffinger Indus.*, 231 Ga. App. 829, 830 (499 SE2d 363) (1998).
[5] *Atlanta Newspapers v. Grimes*, 216 Ga. 74, 79 (114 SE2d 421) (1960).
[6] *Young v. Champion*, 142 Ga. App. 687, 690-691 (2) (236 SE2d 783) (1977).

ants examined the car and rendered opinions. In April 1998, plaintiffs filed a motion asking the trial court to require defendants and their agents (St. Paul and Carson-Brooks) to preserve the Mercedes for trial, contending that the Mercedes contained evidence crucial to the outcome of the case. The motion was unopposed and granted in July 1998.

Less than three months after the order to preserve the car was entered, Sadisco sent a salvage notice to St. Paul asking permission to sell the Mercedes. A representative from St. Paul, inexplicably unaware that the car was the subject of pending litigation and unaware that St. Paul had been ordered to preserve the car, authorized the sale. The Mercedes was destroyed shortly thereafter, without notice to the trial court, defendants' attorneys, or plaintiffs.

Plaintiffs filed a motion for sanctions against defendants for the destruction of the Mercedes. The motion requested that the trial court strike defendants' answers and enter default against them or prohibit defendants from using their expert witness at trial and for additional sanctions. After a hearing on the motion, the trial court issued an order precluding defendants from offering at trial any evidence of any kind concerning the condition of the 1980 Mercedes, which they contend is probative of causation.

To remedy the prejudice resulting from the spoliation of evidence, a trial court may (1) charge the jury that spoliation of evidence creates the rebuttable presumption that the evidence would have been harmful to the spoliator; (2) dismiss the case; or (3) exclude testimony about the evidence. *Chapman v. Auto Owners Ins. Co.*[7] Defendants argue that the trial court, by excluding evidence by their expert witness of causation based on the condition of the Mercedes, imposed too harsh a sanction.

To determine whether the trial court abused its discretion in this case, we look to the factors identified in *Chapman v. Auto Owners Ins. Co.*, supra, for imposing such sanctions:

> (1) whether the [party seeking sanctions] was prejudiced as a result of the destruction of the evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the [party who destroyed the evidence] acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded.

Id. at 542. See *Headley v. Chrysler Motor Corp.*[8]

Applying the five factors, the trial court noted that, with regard

---

[7] *Chapman v. Auto Owners Ins. Co.*, 220 Ga. App. 539 (469 SE2d 783) (1996).

[8] *Headley v. Chrysler Motor Corp.*, 141 FRD 362 (D. Mass. 1991).

to prejudice, plaintiffs had specifically requested the preservation of the Mercedes for use at trial, not just for examination by an expert. The trial court found that plaintiffs were prejudiced by the destruction of the Mercedes because they could not show the car to the jury to support their contentions or to rebut defendants' contentions about the cause of the accident. Plaintiffs were further prejudiced because they could not show the jury the tangible evidence of the nature of the impact, for example, tire marks left on the trunk and roof of the car. Addressing the second factor, the trial court found that the prejudice could not be cured because the car had been stripped and crushed. The trial court did not abuse its discretion in determining that plaintiffs had suffered incurable prejudice as a result of the destruction of the Mercedes.

With regard to the third factor, the trial court found that the practical importance of the Mercedes was the tangible proof of the condition of the car after the collision. Plaintiffs wanted the car at trial to rebut the opinion of defendants' expert witness and to demonstrate the speed of impact and the crush of the car. Defendants make the point that the expert witnesses for all parties had inspected the car and rendered an opinion about the cause of the collision prior to the car's destruction. Furthermore, these experts took extensive photographs of the car. We agree that the expert evidence and photographs are mitigating factors. However, this argument fails to address the loss of the tangible evidence for the jury's viewing, which evidence might have supported the plaintiffs' argument and rebutted the defendants' argument about the cause of the collision.

With regard to the fourth factor, the trial court found bad faith based on the reckless disregard of its order to preserve the evidence. The circumstances here support this finding. The court issued the order to preserve the evidence in July 1998. The car was destroyed in November 1998, just four months later. Defendants rely on the affidavit of the St. Paul employee who authorized the sale of the car. She asserted that she did not know of either the litigation or the court's order and that she would not have approved the sale had she known. However, the record also suggests she made no effort to find out why the car was being held. Assuming the approval of the sale of the Mercedes was inadvertent, we cannot condone or support such reckless conduct by the insurance company. St. Paul is experienced in litigation and claims handling procedure. Knowing it had an affirmative duty to preserve the evidence, St. Paul should have had procedures in place. It is no excuse that the left hand did not know what the right hand was doing. St. Paul was palpably remiss in failing to make reasonable arrangements to preserve the evidence, especially after the trial court issued an order to do so. See *Chapman v. Auto Owners*

*Ins. Co.*, supra at 542; *Northern Assurance Co. v. Ware.*[9]

With regard to the potential for abuse if defendants' expert testimony about the car was not excluded, the trial court observed that plaintiffs would be unable to rebut the theory of that expert. Furthermore, the trial court observed that the spoliation issue would distract the jury from the primary case, the wrongful death suit. The trial court did not abuse its discretion in finding a potential for abuse. Had defendants' expert been permitted to testify, the actions of their agent, St. Paul, prejudiced plaintiffs' ability to rebut that expert opinion. Likewise, actions of St. Paul prevented plaintiffs from presenting tangible evidence of the collision.

After weighing the factors, a trial court should exercise its discretion by imposing sanctions which correspond to its findings. See *Sedrati v. Allstate Life Ins. Co.*[10] (exclusion of expert testimony about evidence which had been destroyed ensured fairness at trial); *Northern Assurance Co.*, supra (exclusion of expert testimony appropriate remedy for spoliation); *Schmid v. Milwaukee Elec. Tool Corp.*[11] (jury charge on spoliation more appropriate remedy than exclusion of expert); *Howell v. Maytag*[12] (more severe sanctions of dismissal or exclusion of evidence were not appropriate). We are mindful that the sanction imposed here, excluding expert testimony, is a harsh sanction as it can be the functional equivalent of striking the answer or dismissal. Cases often depend entirely on the expert, the expert being the only means of proving causation or alternative causes. We also recognize that this sanction has been imposed in other jurisdictions typically where the party seeking sanctions had been denied the opportunity to inspect or analyze the evidence. *Sedrati*, supra; *Northern Assurance Co.*, supra; *Headley*, supra; *Unigard Security Ins. Co. v. Lakewood Engineering &c. Corp.*[13] Although this case is distinguishable because all parties did get to inspect the car, we cannot say the trial court abused its discretion by imposing this sanction.

Defendants advocate a lesser sanction, charging the jury on the rebuttable presumption that the damage on the car did not, in fact, support defendants' argument. While the presumption might remedy the prejudice suffered in the conflicting expert testimony, it does not address the loss of the ability of the jury to view the damage to the car. The spoliator of the evidence should not benefit from its destruc-

---

[9] *Northern Assurance Co. v. Ware*, 145 FRD 281, 283-284 (D. Me. 1993).

[10] *Sedrati v. Allstate Life Ins. Co.*, 185 FRD 388 (M.D. Ga. 1998).

[11] *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F3d 76 (3rd Cir. 1994).

[12] *Howell v. Maytag*, 168 FRD 502 (M.D. Pa. 1996).

[13] *Unigard Security Ins. Co. v. Lakewood Engineering &c. Corp.*, 982 F2d 363 (9th Cir. 1992).

tion. The trial court found that the destruction of the Mercedes impaired its ability to conduct a fair trial and, under the circumstances here, took appropriate steps to remedy the problem. We find no abuse of discretion.

3. The trial court did not err by excluding evidence that Mark Boise, the driver of the Mercedes, had ingested marijuana within 36 hours of the collision on relevance grounds. "The admission or exclusion of evidence is reviewed by an abuse of discretion standard. Questions of relevance are generally matters within the trial court's discretion." (Citation omitted.) *Ray v. Ford Motor Co.*[14] Defendants proffered evidence that Boise had ingested marijuana and that marijuana could affect one's driving skills. However, none of the evidence about the effect of marijuana on driving skills was specific to this case. In fact, the expert deposed that he could not state whether the marijuana had any effect on Boise's driving and that he had no knowledge whether the marijuana contributed to the collision.

4. Although defendants enumerate as error the trial court's admission of photographs from the autopsy of Anita Boise, they have not supported the enumeration with argument, so it is deemed abandoned. Court of Appeals Rule 27 (c) (2).

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED SEPTEMBER 28, 2000.

*Hall, Booth, Smith & Slover, Robert L. Shannon, Jr., Rebecca T. Christian*, for appellants.

*Gray, Hedrick & Edenfield, William E. Gray II, Bruce M. Edenfield, Evan R. Mermelstein*, for appellees.

---

[14] *Ray v. Ford Motor Co.*, 237 Ga. App. 316, 317 (1) (514 SE2d 227) (1999).