A02A0959. MURRAY v. BARRETT et al.

(571 SE2d 448)

POPE, Senior Appellate Judge.

On March 8, 1999, Philip Murray and Paul T. and Timothy N. Barrett entered into a Purchase and Sale Agreement regarding a parcel of land owned by Murray in Marietta. The purchase price for the property was $220,000, and in accordance with the agreement the Barretts paid $10,000 in earnest money. The agreement provided that purchase of the property was expressly contingent upon it being appraised at a fair market value "of at least the Purchase Price."

In May 1999, an appraisal conducted on the property indicated that the property had a value of $152,000, nearly $70,000 below the purchase price. As a result, the Barretts were unable to obtain financing to purchase the property. The Barretts subsequently wrote Murray regarding the appraisal and requesting the return of the $10,000 earnest money deposit. When Murray failed to return the deposit, this litigation ensued.

Following a bench trial, the Barretts were awarded the return of their earnest money, plus interest, as well as $6,000 in attorney fees. Murray appeals.

1. Murray first asserts that the trial court erred in stopping the trial before he had the opportunity to present his case. We find no error.

The determination as to who is entitled to the earnest money in this case turns upon two factual issues: (1) whether the Barretts had applied for financing within ten days as required by the parties' agreement, and (2) whether the property appraised at a fair market value of at least the purchase price. The record showed that the trial judge interrupted the proceedings before Murray presented his case to inform the parties that she was concerned only about one of those issues: whether the Barretts had applied for financing in a timely manner. She stated that she found no issue of fact regarding the appraisal.

Under the terms of the agreement, the Barretts forfeited the earnest money if they failed to apply for financing within ten days after the "final ratification" of the contract. The agreement was signed on March 8, 1999, and there appears to be no dispute that the Barretts were required to apply for financing by March 18, 1999.

Paul Barrett testified at trial that he made the application on or before March 18, and, in fact, had been working with two separate

banks to obtain potential financing for the property even before the parties signed the agreement. Representatives from each lender testified. Although neither representative could state a particular date on which an application for financing on the Murray property was submitted, at least one of the representatives confirmed that Barrett's application had been part of an ongoing process that pre-dated his interest in the Murray property. They also confirmed that Barrett had provided all the required documentation for the loan process. At least one of the banks had pre-approved the loan, pending the results of the appraisal.

Murray testified that he did not believe that the Barretts had complied with the terms of the contract in obtaining financing, but he could not point to any evidence showing that the Barretts had not complied, other than his suspicions that by May 1999, the Barretts were looking for an excuse to get out of the contract.

It was after hearing this evidence that the trial court stopped the proceedings. She explained that she had denied the Barretts' earlier motion for summary judgment only because she believed that there was an issue of fact as to whether the Barretts had applied for financing within ten days as required by the parties' agreement. She asked Murray's counsel what evidence he had on the point. Murray's attorney then made the proffer that he had a witness from one of the Barretts' banks who would testify that there was nothing in the file to show when the loan application was submitted. As the trial judge correctly noted, Murray's proffered evidence simply confirmed the testimony of the other bank witnesses stating that they could not pinpoint the date of the Barretts' application.

The trial judge then requested that Murray make a proffer as to any other evidence he had in the case. Murray's attorney explained that his only other witness was an expert who would testify that there were numerous problems with the methodology of the appraisal and that the appraisal was not reliable. The trial court stated that in reaching her decision she would accept the proffers of Murray's counsel as true, without hearing the testimony. The trial court concluded, however, that the evidence was irrelevant and ruled in favor of the Barretts.

Even assuming without deciding that it was error to prevent the presentation of live witnesses, Murray has shown no harm in the case. See *Karvonen v. State*, 205 Ga. App. 852, 854 (3) (424 SE2d 47) (1992). The proffered evidence regarding the Barretts' loan application was merely cumulative of other evidence, and thus there was no harm in excluding it. "Where there is other evidence relating to the same issues the error addresses, it is highly probable the error did not contribute to the judgment and is, therefore, harmless." (Citation

omitted.) *Craft v. State*, 254 Ga. App. 511, 516 (5) (563 SE2d 472) (2002).

Moreover, we agree with the trial court that the proffered evidence regarding the appraisal was irrelevant. The contract merely required "either an appraisal which Purchaser obtains and pays for or in connection with Purchaser's Application for Required Financing." The agreement contained no additional requirements as to the methodology of the appraisal. The evidence showed that the Barretts obtained the appraisal in connection with their financing and used an appraiser approved by the bank. Accordingly, there would be no error in excluding Murray's proffered expert testimony questioning the methodology employed in the appraisal. See generally *Shasta Beverages v. Tetley USA*, 248 Ga. App. 381, 384 (1) (a) (546 SE2d 800) (2001) (where excluded testimony did not address material issue, testimony was irrelevant and no abuse of discretion occurred).

2. Murray next asserts that the trial court erred in granting the Barretts attorney fees without first holding an evidentiary hearing on the issue. We agree.

The only evidence at trial on the issue of attorney fees was Paul Barrett's testimony that he had incurred "[s]omewhere in the neighborhood of $6,000" in attorney fees. Without hearing any other evidence on the matter, the trial court found that attorney fees of $6,000 were reasonable and necessary in obtaining a judgment in the case. The trial court also took judicial notice, and Murray does not dispute, that the Barretts' counsel "is an attorney in good standing in the community with considerable experience in handling cases of this type."

We find that this evidence was insufficient to support the $6,000 award of attorney fees in this case. Not only did the Barretts fail to present any evidence regarding the reasonableness of their attorney fees, they failed to even present the actual amount incurred. A rough estimate such as that provided by Paul Barrett's testimony is insufficient to support a fees award. "An award of attorney fees is unauthorized if [the Barretts] failed to prove the actual costs of [their attorney] and the reasonableness of those costs." (Citations and punctuation omitted.) *Southern Co. v. Hamburg*, 220 Ga. App. 834, 842 (5) (470 SE2d 467) (1996).

Accordingly, we reverse the award of attorney fees and remand the case for an evidentiary hearing as to the amount of the attorney fees award. *Southern Co. v. Hamburg*, 220 Ga. App. at 842-843 (5).

3. Murray also correctly asserts that the trial court erred in awarding pre-judgment interest at the rate of 12 percent per annum. Accordingly, this portion of the award must also be reversed and the case remanded to the trial court with direction that it recalculate the amount of pre-judgment interest at the legal rate of seven percent

per annum in accordance with OCGA § 7-4-2 (a). See *Homeland Communities v. Rahall & Fryer, P.C.*, 235 Ga. App. 440, 443 (3) (509 SE2d 714) (1998).

*Judgment affirmed in part and reversed and remanded in part. Ruffin, P. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 18, 2002 —

*Charles G. Harbin, Jr.*, for appellant.
*Donald L. Mize*, for appellees.