A02A1932. BRIDGESTONE/FIRESTONE NORTH AMERICAN TIRE, LLC et al. v. CAMPBELL.
A02A1933. NISSAN NORTH AMERICA, INC. et al. v. CAMPBELL.
(574 SE2d 923)

RUFFIN, Presiding Judge.

After his Nissan Pathfinder rolled over in a single-car accident, Ross Campbell sued Nissan Motor Company[1] ("Nissan") and Bridgestone/Firestone North American Tire, LLC ("Firestone"), the company that manufactured the truck's tires. Prior to filing suit, however, Campbell disposed of the Pathfinder and had the tires destroyed. Upon learning that the evidence had been destroyed, the defendants moved to dismiss Campbell's complaint, asserting that the spoliation of critical evidence prejudiced the companies' ability to present a defense. In the alternative, the defendants sought to exclude all photographs and testimony relating to the destroyed evidence.

Although the trial court excluded any "examination materials and testimony" relating to the inspection of the truck or tires, the court otherwise denied the defendants' motions. In Case No. A02A1932, Firestone appeals the trial court's order; in Case No. A02A1933, Nissan appeals. Both defendants assert that the trial court abused its discretion in failing to dismiss the case and/or to exclude the photographs of the destroyed evidence.[2]

The record reveals that on October 10, 1998, Campbell was injured when his 1992 Pathfinder rolled over. Campbell alleges that the accident was caused by a rear tire tread separation. In view of possible litigation, Campbell contacted an attorney, and Campbell and his father took pictures of the Pathfinder and the tires. Campbell also took the tires and remnants of the tread to a forensic tire engineer who examined the tires and took additional photographs.

According to Campbell, he decided not to file suit because he could not afford an attorney. But Campbell later heard a "number of reports" about faulty Firestone tires, and he decided to sue Nissan and Firestone. In his complaint, Campbell alleged that Nissan was strictly liable for design defects in the Pathfinder, which made the vehicle prone to an unreasonable risk of rollover. Similarly, Campbell asserted that Firestone was strictly liable for marketing a defectively designed and manufactured tire. Campbell also alleged claims for negligence and breach of warranty.

Through discovery, Nissan and Firestone attempted to inspect

---

[1] Campbell also sued Nissan North America, Inc. and Peachtree Nissan, Inc. For the sake of clarity, we refer to both simply as Nissan.

[2] See *R. A. Siegel Co. v. Bowen*, 246 Ga. App. 177, 179 (2) (539 SE2d 873) (2000) (abuse of discretion standard).

the truck and tires. In response to Nissan's request to produce, Campbell instructed the defendants to contact his attorney "regarding inspection" of the truck and tires. Both defendants wrote Campbell's attorney to no avail. Eventually, Firestone moved to compel production, at which point Campbell supplemented his discovery responses to inform Firestone that, "[u]pon further investigation, it has been determined that the subject tire has been discarded and accordingly, it is no longer available for inspection." Campbell further informed both Nissan and Firestone that his attorney was unable to locate the Pathfinder. Campbell then provided the defendants the pictures of the truck and tires.

The defendants deposed Campbell, questioning him regarding the missing evidence. At this point, Campbell informed the defendants that, following the accident, he went to the salvage yard where his truck was being stored, removed the rear tires, and took them to a forensic tire engineer for examination. According to Campbell, after initially deciding not to pursue legal action, he instructed the engineer to dispose of the tires. When asked to provide the name of the engineer, Campbell refused.[3] With regard to the truck, Campbell admitted that, in order to obtain the insurance proceeds, he was required to transfer the title to the insurer, which evidently disposed of the vehicle. Upon learning that the truck and tires were irretrievably lost, the defendants sought either to have Campbell's complaint dismissed or the photographs excluded from evidence. But the trial court refused to grant the relief sought, and these appeals ensued.

According to the defendants, Campbell's claims should be dismissed because of Campbell's spoliation of evidence. Spoliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation.[4] And, when key evidence has been destroyed, exclusion of evidence or dismissal of a case may be warranted.[5] In determining whether such a severe sanction is warranted, the trial court must consider:

> (1) whether the defendant was prejudiced as a result of the destruction of the evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4)

---

[3] Campbell refuses to provide this information, citing OCGA § 9-11-26 (b) (4) (B). This statute precludes a party from discovering information regarding a nontestifying expert absent "a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." As the defendants do not assert that they were entitled to the information under this provision, we do not address this issue on appeal.

[4] See *Ga. Bd. of Dentistry v. Pence*, 223 Ga. App. 603, 608 (6) (478 SE2d 437) (1996).

[5] See *Chapman v. Auto Owners Ins. Co.*, 220 Ga. App. 539, 542-543 (469 SE2d 783) (1996).

whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded.[6]

In applying these factors, we note that the defendants — particularly Firestone — were prejudiced by the destruction of the evidence. Campbell alleges that he lost control of the Pathfinder after a rear tire "came apart in operation well within its expected life." During his deposition, however, Campbell could not recall when he purchased the tires, which he admitted were not the original tires on the truck. Moreover, other evidence indicated that the tires had unusual wear patterns, which may suggest that the accident was caused by something other than fault on the part of the tire manufacturer. Under these circumstances, an examination of the actual tire would have significantly enhanced Firestone's ability to refute Campbell's claim that the accident was caused solely by a design defect.[7]

With regard to Nissan, Campbell alleged that the Pathfinder had been negligently designed and manufactured, which rendered the vehicle prone to rollovers. Arguably, the fact that Campbell alleged a design defect renders the loss of the actual truck less material because all 1992 Pathfinders have the same design. As Nissan points out, however, the destruction of the truck prevented the company from examining whether there had been any alterations to the truck, modifying the design. Under these circumstances, we agree that the destruction of this evidence renders a full defense impossible.[8]

We must next address whether the prejudice can be cured.[9] Here, although the evidence was destroyed, pictures were taken of the truck and tires, which Campbell provided to the defendants. Although the existence of photographs may mitigate the loss, they are no substitute for the actual evidence.[10] This is particularly true where, as here, the majority of photographs were taken by Campbell or his father, neither of whom had expertise in taking such pictures. It follows that the prejudice cannot be cured. Similarly, the third factor — the practical importance of the evidence — is met as the truck and tires are critical to the underlying claim. Indeed, Campbell does not dispute this issue.

The fourth factor — whether the plaintiff acted in good or bad faith — is more troubling. According to Campbell, the record does not demonstrate that he acted in bad faith because "there was no pend-

---

[6] Id. at 542.

[7] Although there was a recall of certain Firestone tires, this particular brand was not subject to the recall.

[8] See *Chapman*, supra at 540.

[9] See id.

[10] See *R. A. Siegel*, supra at 181.

ing litigation" when the evidence was destroyed. Although Campbell consulted with an attorney about a possible lawsuit, he concluded that he was unable to afford the expenses of litigation. Campbell further asserts that his refusal to provide the name of the expert that examined the tires does not demonstrate bad faith as he simply was exercising his rights under the Civil Practice Act.

In *Chapman*, we held that the harsh sanction of "dismissal should be reserved for cases where a party has maliciously destroyed relevant evidence with the sole purpose of precluding an adversary from examining that relevant evidence."[11] As a general rule, this is true. However, malice may not always be required before a trial court determines that dismissal is appropriate. As the Fourth Circuit has noted, "even when conduct is less culpable, dismissal may be necessary if the prejudice to the defendant is extraordinary, denying it the ability to adequately defend its case."[12] Thus, in determining whether sanctions for spoliation are warranted, the trial court must weigh the degree of the spoliator's culpability against the prejudice to the opposing party.

And, contrary to Campbell's contention on appeal, there is some evidence of his culpability. Through discovery, Nissan and Firestone sought to examine the truck and tires. Under the Civil Practice Act, a party responding to discovery is required to respond fully to requests for information, "which is relevant to the subject matter involved in the pending action . . . including the existence, description, nature, custody, condition, and location of any . . . tangible things and the identity and location of persons having knowledge of any discoverable matter."[13]

At the time Campbell responded to the defendants' discovery, he knew that he had told his expert to destroy the tire and had transferred title of the truck to the insurance company. Rather than imparting this information, however, Campbell directed the defendants to contact his attorney. According to Campbell's attorneys, they "have often been able to locate products which have supposedly [been] destroyed." Evidently, Campbell did not want to inform the defendants that the evidence had been destroyed without first attempting to locate the truck and tires. Nonetheless, Campbell's desire to investigate the whereabouts of the evidence does not obviate his duty to fully inform the defendants regarding the status of the evidence. Indeed, as noted by Campbell, there always remains a chance that the evidence will, in fact, be found. Under the circum-

---

[11] (Punctuation omitted.) Supra at 542.

[12] *Silvestri v. Gen. Motors Corp.*, 271 F3d 583, 593 (4th Cir. 2001).

[13] OCGA § 9-11-26 (b) (1). See also OCGA §§ 9-11-33 (a) (2) (interrogatories "shall be answered separately and fully"); 9-11-34 (b) (2) (duty of party receiving requests to produce).

stances, the defendants may have acted more quickly in attempting to locate the evidence than Campbell.

Finally, there is also evidence of the potential for abuse. Although Campbell claims the evidence was destroyed after he decided to forgo litigation, he later decided to file suit. Like the defendants, we find this scenario troubling. The spoliation of critical evidence — for whatever reason — "may result in trial by ambush."[14] And permitting parties to engage in such a tactic undermines the integrity of the judicial process.[15]

Given the evidence presented, the trial court would have been authorized to dismiss Campbell's complaint or, in the alternative, to exclude the photographs of the destroyed evidence. The trial court declined to do so, however, limiting the defendants' remedies to "the exclusion of inspection notes or other examination materials and testimony by consulting experts or any witness based on the inspection of the vehicle or tires" and to a jury instruction that spoliation of evidence raises a presumption against the spoliator.[16] Thus, the narrow issue presented is whether the trial court abused its discretion in refusing to impose harsher sanctions.[17] In other words — whether dismissal or evidence exclusion is mandated as a matter of law. It is not.

Dismissal of a case is the ultimate sanction, and such sanction is not required here. Although the defendants are hampered by the lack of evidence, so, too, is Campbell. Because the trial court excluded evidence from any witness that actually inspected the truck or tires, all parties are limited to the photographs to present their case. The defendants, who sought exclusion of the photographs, suggest that the pictures are not helpful because they were taken by Campbell and his father, who are unqualified to take such forensic photographs. Again, however, the defendants are free to point out the lack of evidentiary value of the photographs, which Campbell also must use to sustain his claim. Thus, the trial court has crafted a viable remedy, which we will not disturb on appeal.

*Judgment affirmed. Barnes, J., and Pope, Senior Appellate Judge, concur.*

---

[14] *Chapman*, supra at 542.

[15] See *Silvestri*, supra at 590 ("The policy underlying this inherent power of the courts [to dismiss an action based upon spoliation of evidence] is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth.").

[16] *Martin v. Reed*, 200 Ga. App. 775 (1) (409 SE2d 874) (1991).

[17] See *R. A. Siegel*, supra at 179.

DECIDED DECEMBER 6, 2002

*Holland & Knight, Alfred B. Adams III, Laurie W. Daniel, Gregory J. Newman*, for appellants (case no. A02A1932).

*King & Spalding, Andrew T. Bayman, Amy M. Power, Jonathan R. Friedman*, for appellants (case no. A02A1933).

*Christopher L. Brinkley*, for appellee.

*Moraitakis, Kushel & Pearson, Albert M. Pearson III*, amicus curiae.