### A08A0971. AMLI RESIDENTIAL PROPERTIES, INC. v. GEORGIA POWER COMPANY.

(667 SE2d 150)

MILLER, Judge.

On or about December 20, 2001, a fire destroyed an apartment building located at 8085 Brandon Mill Road in Dunwoody. AMLI Residential Properties, Inc. ("AMLI"), which owned the building, sued Georgia Power Company ("GPC"), claiming that GPC's negligence in the inspection, maintenance, repair, and operation of the electrical cable and associated equipment supplying power to the building caused the fire. The trial court granted GPC's motion in limine to exclude certain evidence due to its spoliation by AMLI, and subsequently granted GPC's motion for summary judgment. AMLI appeals from the trial court's grant of GPC's motion for summary judgment, arguing that the trial court erred in excluding evidence through the imposition of spoliation sanctions, and that had the evidence not been excluded it would have shown the existence of factual issues precluding the grant of summary judgment. For the reasons set forth below, we conclude that the trial court did not abuse its discretion in granting GPC's motion in limine, and that the trial court correctly granted summary judgment to GPC.

To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56; *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Our review of the trial court's grant of GPC's motion for summary judgment is de novo. *Pyle v. City of Cedartown*, 240 Ga. App. 445, 446 (524 SE2d 7) (1999). However, "[w]e will not disturb a trial court's imposition of sanctions for evidence spoliation unless the court abused its discretion." (Footnote omitted.) *Bouvé & Mohr, LLC v. Banks*, 274 Ga. App. 758, 762 (1) (618 SE2d 650) (2005).

So viewed, the evidence shows that on January 4, 2002, AMLI's insurer advised GPC that it suspected that GPC's electrical equipment caused the fire and asked that GPC not remove evidence or alter the scene. The following month, GPC employees met at the scene of the fire with Richard Underwood, an electrical expert retained by AMLI. Underwood watched the GPC employees "dig up

the cables." Underwood found two ground rods associated with the two meter panel boxes near the suspected site of the fire. He removed the partial remains of what the parties refer to as "Ground Rod 1" and took it to storage as evidence. Underwood asked GPC employees to help him remove "Ground Rod 2" because he was unable to pull it out of the ground, but they ignored his request.[1] Underwood did not take Ground Rod 2.

AMLI sued GPC on October 15, 2002. In October of the following year, GPC deposed AMLI experts Underwood and John Lentini. Underwood opined that the origin of the fire was at Ground Rod 1, which overheated and ignited some pine straw. Lentini also opined that the origin of the fire was at Ground Rod 1. According to Lentini, GPC did not bury its electrical wires sufficiently, resulting in damage to the wires which GPC then improperly repaired. As a result, "straight current [went] into the ground, which, in turn, caused electrolytic corrosion of the ground rod and heating of the ground rod." Lentini opined that the heated rod ignited an undetermined fuel source on the night of the fire.

On February 5, 2004, GPC expert Eric Jackson deposed that in his opinion the electrical equipment, whether it be GPC's or AMLI's, was not involved in causing the fire. Jackson was asked whether he had done any testing, but responded that there was "no testing to be done." Jackson was asked whether another rod from the development could be tested, and he responded that "you can perform any test you want to" on another rod. He further stated that you could not know whether such a rod would be representative of the scenario alleged by AMLI to have occurred at the fire scene, in light of a list of unknown facts.

On March 10, 2004, AMLI's counsel wrote GPC's counsel expressing his intention to remove the remainder of Ground Rod 1 as well as Ground Rod 2, and that he presumed that GPC would want representatives present during the process. GPC responded two days later that it did not object to the removal of the ground rods but required that Jackson be present. Before March 10, 2004, however, AMLI had arranged for a contractor to search for the remains of the two ground rods, and the contractor had vacuumed dirt in the area. In the process, the contractor had located and removed a portion of Ground Rod 2. The information that a portion of Ground Rod 2 had been removed was not conveyed by AMLI's counsel's letter.

On April 12, 2004, Jackson and one of GPC's attorneys met with Underwood at the site of the fire. Underwood arrived at the scene and attempted to remove the rods with a Bobcat excavator, but was

---

[1] The ground rods were not owned by GPC.

unsuccessful. Underwood did not mention that a portion of Ground Rod 2 had already been removed. Before leaving the scene, GPC's attorney told Underwood that if AMLI or an AMLI expert attempted to remove the ground rods again that GPC wanted to be notified and that Jackson needed to be present for the removal. GPC never received any such notification.

On May 14, 2004, AMLI's counsel wrote GPC's counsel that "as the result of recovering the remains of the ground rods, including the top of the second ground rod," he had asked Applied Technical Services ("ATS") to perform a metallurgical examination of the remains. The report showed strong evidence of "localized heat generation" on Ground Rod 2 that was not due to exposure to the fire. GPC received no advance notice of the tests.

In light of the ATS report, GPC deposed Semih Genuculu, the metallurgist who performed the evaluation, and re-deposed Underwood and Lentini. Underwood and Lentini were now of the opinion that Ground Rod 1 could be ruled out as the source of the fire, and that the source was instead Ground Rod 2. According to Lentini, electricity leaking from the cables traveled through the ground to the ground rods, heating Ground Rod 2. Genuculu would not opine as to the source of the fire, but he testified that while Ground Rod 1 was not exposed to heat, Ground Rod 2 was.

GPC also retained Paul D. Eason, a licensed professional engineer whose duties included performing metallurgical testing to determine the cause and origin of fires. Eason reviewed Genuculu's metallurgist report, Genuculu's deposition, the remains of Ground Rod 1 and Ground Rod 2, and the associated clamps. Eason averred that he was familiar with plaintiff's theory that excessive heating in the area where the clamp attached to Ground Rod 2 was the source of the fire. According to Eason, "the removal and sectioning of the clamps and additional sectioning of the ground rods [during the testing] and, in particular, Ground Rod [ ]2, permanently altered and damaged these items." Eason's testimony that the rods were permanently altered by the testing was consistent with Genuculu's, Lentini's, and Underwood's testimony.

According to Eason, a metallurgist could have performed two different tests to check the validity of AMLI's theory of causation. After describing the tests, which included an examination of the contact surfaces between the rod and the clamp, Eason averred that "[i]t is no longer possible to perform either of these tests with the evidence in its current state." In Eason's opinion, AMLI's "theory as to the cause of the fire can never be adequately tested."

On December 17, 2004, GPC filed its motion to dismiss or, in the alternative, motion in limine on the grounds of AMLI's spoliation of material evidence. Following a hearing, the trial court ordered that

AMLI be precluded from introducing or conveying to the jury, through expert witnesses or otherwise, any evidence whatsoever relating to Ground Rod 2. GPC subsequently moved for summary judgment, arguing that there was no triable issue on the question of causation. The trial court granted the motion.

1. AMLI contends that the trial court abused its discretion in imposing spoliation sanctions. We disagree.

"Spoliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation." (Footnote omitted.) *Bridgestone/Firestone North American Tire v. Campbell*, 258 Ga. App. 767, 768 (574 SE2d 923) (2002). Where a party has destroyed or significantly altered evidence that is material to the litigation, the trial court has wide discretion to fashion sanctions on a case-by-case basis. *Banks*, supra, 274 Ga. App. at 764 (2). For example, the trial court may remedy the prejudice by charging "the jury that spoliation of evidence creates the rebuttable presumption that the evidence would have been harmful to the spoliator." (Citation and footnote omitted.) *R. A. Siegel Co. v. Bowen*, 246 Ga. App. 177, 180 (2) (539 SE2d 873) (2000). The trial court may also be authorized to dismiss the case or to prevent that party's expert witnesses from testifying in any respect about the evidence. *Chapman v. Auto Owners Ins. Co.*, 220 Ga. App. 539, 542-543 (469 SE2d 783) (1996). "Whether . . . remedies are warranted . . . is a matter for the trial court to decide." Id. at 543. The trial court should weigh five factors before exercising its discretion to impose sanctions:

> (1) whether the party seeking sanctions was prejudiced as a result of the destruction of the evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the party who destroyed the evidence acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded.

(Citations, punctuation and footnote omitted.) *Bowen*, supra, 246 Ga. App. at 180 (2).

(a) AMLI argues that the trial court erred in imposing spoliation sanctions because (1) GPC did not suffer prejudice but merely manufactured a spoliation claim, (2) any alleged prejudice could be cured, and (3) AMLI and its agents did not act in bad faith. We disagree.

(i) The trial court found that "[b]ecause the opportunity to examine and test Ground Rod [ ]2 in its unaltered state has been forever foreclosed, [GPC] has been prejudiced by AMLI's failure to provide notice to [GPC] prior to the removal and destructive testing

of Ground Rod [ ]2." While AMLI does not deny that its experts engaged in destructive testing of Ground Rod 2 without prior notification to GPC, AMLI argues that there was no prejudice to GPC because GPC refused to help Underwood remove Ground Rod 2; because "it is fairly evident" that GPC retained Eason to manufacture a spoliation claim; and because GPC expert Jackson deposed that there was no need to test the ground rods. We find these arguments unpersuasive.

That GPC employees refused to assist Underwood in removing the ground rods is irrelevant to the issue of prejudice. GPC did not own the ground rods, no lawsuit was filed at the time, and the GPC employees were not under any duty to help Underwood. Additionally, GPC hired Eason only after AMLI came forward with a new metallurgical test. Since GPC needed a metallurgist to evaluate that test, the trial court could fairly conclude that GPC did not hire Eason to "manufacture" a spoliation claim. Nor does Jackson's deposition testimony, indicating that there was no need to test Ground Rod 1 or the other rods at the site, show that GPC was not prejudiced by the destructive testing of Ground Rod 2. When Jackson gave his testimony AMLI's theory of causation rested entirely on Ground Rod 1 — evidence which Jackson had been able to examine in its unaltered state.

Rather, GPC's prejudice is clearly established by the record. Because GPC was not afforded the opportunity to examine Ground Rod 2 in its unaltered state, and because AMLI's expert removed the clamp and sawed the rod into pieces without prior notice, GPC was foreclosed from an opportunity to directly challenge AMLI's theory of causation. "[T]he destruction of this evidence renders a full defense impossible." (Footnote omitted.) *Bridgestone*, supra, 258 Ga. App. at 769. See *Bowen*, supra, 246 Ga. App. at 181 (2) (unilateral destruction of material evidence by the defendants prejudiced the plaintiffs).

(ii) The trial court also concluded that the prejudice to GPC could not be cured because GPC had been forever denied the opportunity to examine or test Ground Rod 2 in its unaltered state. AMLI challenges this finding, arguing that there are numerous ground rods at the apartment complex which GPC could test as representative samples. Even if we accept this argument, it does nothing to refute Eason's testimony that Ground Rod 2 has been "permanently altered and damaged" by AMLI's experts. At best, GPC had the opportunity to cobble together a circumstantial case to refute evidence based on AMLI's examination and testing of the actual rod that it contends was the source of the fire. Accordingly, the trial court's finding that the prejudice to GPC could not be cured is supported by the record.

(iii) As to the three remaining factors, the trial court found that the practical importance of the evidence was "significant," and that if an appropriate sanction was not rendered there would be potential for abuse, but that AMLI, its experts, and its counsel did not act in "malicious bad faith." AMLI does not challenge the trial court's findings as to the significance of the evidence or the potential for abuse, but argues that the trial court could not impose sanctions in the absence of a finding that AMLI or its agents acted in bad faith.

Exclusionary sanctions may be appropriate where the spoliator has not acted in bad faith.[2] For example, in adopting the five-part test which we apply here, the court in *Chapman* relied on *Northern Assurance Co. v. Ware*, 145 F.R.D. 281 (D. Me. 1993). In *Ware*, the court found that there was "no evidence that Plaintiff here intentionally and maliciously allowed destruction of evidence of causation and origin of the fire," but nevertheless concluded that the appropriate sanction was to prevent the plaintiff from presenting the testimony of its expert, which was based on the evidence the plaintiff permitted to be destroyed. Id. at 283-284.

The court in *Ware* drew a distinction between "the accidental, random, or unintended dissipation of evidence by persons having no interest in its preservation," and those cases where "a party knowledgeable of litigation strategy, tactics, and policies who invokes the aid and jurisdiction of the Court and its processes . . . acted *unfairly* to preclude the opportunity of an adversary to be apprised of the existence of a defense to a plaintiff's claims." (Emphasis in original.) Id. at 284. Applying that distinction to this case, it is readily apparent that GPC did not complain of a random, accidental, or unintended dissipation of evidence. In its order on spoliation, the trial court found that the recognized standards for investigating the causes of fire require notice to interested parties before destructive testing of evidence to allow those parties to object or be present at the test. The trial court further found that Lentini, who was responsible for ordering the test of Ground Rod 2, was aware of both the destructive nature of the test and that industry standards required notification, but failed to inform AMLI that GPC should be notified before the test. The trial court also concluded that the removal of Ground Rod 2 without prior notice to GPC violated an

---

[2] Even in the context of the harsh sanction of dismissal, a showing of malice may not always be required. See *Bridgestone*, supra, 258 Ga. App. at 770. "[I]n determining whether sanctions for spoliation are warranted, the trial court must weigh the degree of the spoliator's culpability against the prejudice to the opposing party." Id. Compare *Chapman*, supra, 220 Ga. App. at 542 ("dismissal should be reserved for cases where a party has maliciously destroyed relevant evidence with the sole purpose of precluding an adversary from examining that relevant evidence") (citation and punctuation omitted).

understanding between the parties to provide notice and an opportunity to be present during the removal of evidence. These findings, which are supported by the evidence, show that the removal of Ground Rod 2 and its subsequent destructive testing without notice to GPC — though not judged to be in bad faith — was nevertheless wrongful. See *Wal-Mart Stores v. Lee*, 290 Ga. App. 541, 546 (1) (659 SE2d 905) (2008) (trial court did not abuse its discretion in imposing exclusionary sanction for spoliation of evidence, notwithstanding that the trial court did not find that spoliator acted in bad faith). Compare *Johnson v. Riverdale Anesthesia Assoc.*, 249 Ga. App. 152, 155 (2) (547 SE2d 347) (2001) ("a party should only be penalized for destroying documents if it was wrong to do so") (punctuation and footnote omitted). Accordingly, we reject AMLI's claim that the trial court's finding that AMLI and its experts did not act in bad faith precluded its imposition of sanctions.

(b) AMLI further contends that the trial court's imposition of spoliation sanctions was not based upon an adequate factual record. Although presented as a separate claim of error, AMLI recasts its earlier argument that the evidence did not support the trial court's finding of prejudice or inability to cure that prejudice. AMLI attacks Eason's opinions as "untested," but fails to refute Eason's affidavit. Ultimately, it is the actions of AMLI and its agents that establish the factual basis for the trial court's findings of prejudice and inability to cure. Accordingly, we find no merit in AMLI's argument.

In light of the foregoing, the trial court, after weighing the appropriate factors, did not abuse its discretion in sanctioning AMLI for spoliation of evidence. See *Bowen*, supra, 246 Ga. App. at 182 (2) ("[t]he spoliator of the evidence should not benefit from its destruction").

2. Given that the trial court acted within its discretion in imposing spoliation sanctions, there remains no genuine issue of material fact as to whether GPC's negligence caused the fire. "A plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough." (Citations and punctuation omitted.) *Purvis v. Steve*, 284 Ga. App. 116, 119 (1) (643 SE2d 380) (2007). It follows that the trial court correctly granted GPC's motion for summary judgment.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED AUGUST 22, 2008.

*Kevin P. Smith, Daniel Hogan*, for appellant.

*Troutman Sanders, Scott A. Farrow, John G. Rigney,* for appellee.