A09A0069, A09A0070. BAGNELL et al. v. FORD MOTOR COMPANY et al.; and vice versa.

(678 SE2d 489)

JOHNSON, Presiding Judge.

This products liability action arose out of a tragic one-vehicle wreck that occurred in July 2001. Barbara Myers, a Georgia resident, was driving her grandchildren and several other individuals from Houston, Texas to Atlanta in a 1991 Ford Aerostar van when she lost control on a Texas highway. The van rolled over and fell off a bridge into a river. Myers and one of her grandchildren survived, but five passengers drowned.

Lori Bagnell and other representatives of the accident victims (collectively "Bagnell") sued Ford Motor Company in Clayton County, alleging that a design defect in the Aerostar van made it unstable and prone to roll over when fully loaded with passengers and/or luggage. A jury ultimately returned a defense verdict, and the trial court entered judgment for Ford. Bagnell appeals that judgment in Case No. A09A0069, arguing that the trial court erred in applying the statute of repose to several claims and improperly excluded causation testimony.[1] Ford cross-appeals in Case No. A09A0070, challenging several rulings. For reasons that follow, we reverse the

---

[9] See id. at 495 (2).

[10] Compare id. at 494 (1); *Haynes v. State*, 227 Ga. App. 64 (488 SE2d 119) (1997).

[1] Bagnell also sued Myers for negligence, and the jury returned a verdict in Myers' favor. Bagnell has not raised any claim on appeal that would affect the judgment entered for Myers. Accordingly, Myers is hereby dismissed from this appeal. See *Flynn v. Mack*, 259 Ga. App. 882, 883 (578 SE2d 488) (2003) ("It is well settled that where several are sued at law or in equity and a several verdict is had, a new trial as to one will not disturb the other.") (citation and punctuation omitted).

judgment in Case No. A09A0069 and affirm the judgment in Case No. A09A0070.

## Case No. A09A0069

1. Bagnell's original complaint alleged claims against Ford for strict liability, negligent design, and failure to warn of a stability hazard. Following discovery, Ford moved for summary judgment on several grounds, including that Georgia's ten-year statute of repose barred the strict liability and negligent design claims, which were filed over twelve years after Ford first sold the van.[2] The trial court granted the motion as to the strict liability allegations. It also found the statute of repose applicable to the negligent design claim, but concluded that questions of fact remained as to whether Ford's conduct fell within the "willful, reckless, or wanton disregard" exception to the statute.[3]

Bagnell challenges these rulings on appeal. She contends that because the wreck occurred in Texas, the trial court should have applied Texas' fifteen-year statute of repose,[4] rather than Georgia's ten-year statute. Asserting that she brought her claims less than 15 years after Ford sold the van, Bagnell argues that the trial court erred in barring the strict liability claim and in imposing a wilful/reckless conduct requirement on her negligent design allegations.

Georgia's choice-of-law rules provide the key for resolving this claim of error. Under lex loci delicti, tort cases are governed by the substantive law of the state where the tort or wrong occurred — in this case, Texas.[5] Questions involving procedure or the appropriate remedy, however, are decided using the law of the state where the action was filed.[6] We must determine, therefore, whether the statute of repose is substantive or remedial/procedural in nature. If remedial or procedural, Georgia law applies.

Our research has revealed no Georgia authority discussing this issue in the choice-of-law context. But we apply a similar substantive versus procedural/remedial analysis in determining whether a statute has retroactive effect, and the analysis in those cases is helpful here.

---

[2] See OCGA § 51-1-11 (b) (2). The statute of repose does not apply to failure-to-warn claims. See *Chrysler Corp. v. Batten*, 264 Ga. 723, 727 (4) (450 SE2d 208) (1994).

[3] OCGA § 51-1-11 (c) (ten-year limitation period does not apply to "an action seeking to recover from a manufacturer for injuries or damages . . . arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property").

[4] See Tex. Civ. Prac. & Rem. Code § 16.012 (b).

[5] *Fed. Ins. Co. v. Nat. Distrib. Co.*, 203 Ga. App. 763, 765 (417 SE2d 671) (1992).

[6] Id.

Generally, statutes function prospectively. Legislation that governs court procedure or impacts a remedy, however, may be applied retroactively.[7] And such is the case with statutes of repose. As explained in *Trax-Fax, Inc. v. Hobba*, "statutes of repose *look only to remedy and not to substantive rights*, and thus under certain conditions can be applied retroactively."[8] We see no reason why the *Trax-Fax* language — specifically, its determination that the statute of repose is remedial/procedural in nature — should not extend to choice-of-law cases.

Trying to avoid this result, Bagnell argues that our Supreme Court deemed the statute of repose substantive in *Browning v. Maytag Corp.*[9] We disagree. Although the *Browning* Court refused to apply the statute of repose retroactively to bar a pre-existing substantive claim,[10] nothing in *Browning* characterized the statute as substantive or found that it could never be applied retroactively. The Court merely concluded that in certain circumstances, the statute of repose has no retroactive effect — a conclusion entirely consistent with *Trax-Fax*.

On appeal, Bagnell notes that several other jurisdictions have found statutory time limitations to be substantive in nature. Georgia courts, however, have consistently held that the statute of repose involves remedial — rather than substantive — rights. And under our choice-of-law rules, Georgia's procedural and remedial provisions govern this case. Accordingly, the trial court properly applied the ten-year statute of repose to Bagnell's claims.

2. Nevertheless, an evidentiary error at trial compels us to reverse the jury's verdict and the resulting judgment for Ford. Following the statute of repose rulings, Bagnell proceeded to trial only on her claim that Ford was required, but failed, to place a warning in the van regarding the alleged stability hazard.[11] Attempting to establish causation for this claim, Bagnell's counsel asked Barbara Myers at trial whether she would have driven the van filled with passengers and luggage if she had known "that the vehicle was less stable in that condition." When Myers replied "no," Ford objected, asserting that the testimony was speculative. The trial court sustained the objection.

---

[7] See *Davis v. Lugenbeel*, 283 Ga. App. 642, 643 (642 SE2d 337) (2007).

[8] (Citations and punctuation omitted; emphasis supplied.) *Trax-Fax, Inc. v. Hobba*, 277 Ga. App. 464, 470-471 (2) (b) (627 SE2d 90) (2006). See also *Davis*, supra at 643-644; *Bieling v. Battle*, 209 Ga. App. 874, 878 (1) (434 SE2d 719) (1993).

[9] 261 Ga. 20 (401 SE2d 725) (1991).

[10] Id. at 21-22.

[11] Bagnell dismissed her negligent design claim after the trial court determined that it was subject to the wilful/reckless conduct standard of proof.

A short time later, Bagnell's counsel asked Myers whether she would have driven the van that day if Ford had placed a warning in the vehicle regarding the rollover risk. Ford again raised a speculation objection, which the trial court sustained. Recalling that Myers responded "no" when first asked whether she would have driven the vehicle if warned of the danger, Ford then moved the trial court to strike that answer. The trial court instructed the jury:

> I did not recall that [Myers] may have answered the question. I had sustained an objection as to a question about what she might have done if she had seen something that she apparently did not see as speculation. If she did answer that question, ladies and gentleman, you should not take her answer into account because I sustained the objection as to that question.

Bagnell argues that the trial court gutted her failure-to-warn case by preventing her from presenting proper causation testimony through Myers. She notes that, according to the jury's special verdict form, jurors found that Ford failed to provide adequate warnings in the van, but that this failure did not proximately cause the injuries and damages at issue. Bagnell thus claims that the erroneous evidentiary ruling undermined her case, requiring reversal. We agree.

Under Texas law,[12] a failure-to-warn claimant proves causation by showing "that adequate warnings would have made a difference in the outcome, that is, that they would have been followed."[13] As explained by the Texas Supreme Court, the necessary proof may consist of little more than a driver's "self-serving assertion" that he or she "would have been mindful of an adequate warning had it been given."[14] This is just the type of evidence Bagnell sought to introduce through Myers, and the trial court erred in excluding it as speculative.

Ford argues on appeal that even if the trial court erred in excluding the causation evidence, the error was harmless. It notes that immediately after the trial court instructed the jury to disregard Myers' testimony, Bagnell's counsel questioned Myers as follows:

> Q. Mrs. Myers, do you believe, as a consumer who was driving this Aerostar in a fully loaded condition with

---

[12] As discussed above, the trial court applied Texas substantive law because the wreck occurred in Texas.

[13] *Gen. Motors Corp. v. Saenz*, 873 SW2d 353, 357 (Tex. 1993).

[14] Id.

passengers and luggage, that you should've been warned of the increased risk of rollover with the vehicle in this condition?

A. Yes, I really do. I wouldn't have gone if we saw that because we had children.

Once again, Ford objected to Myers' response as speculative. This time, however, the trial court overruled the objection. Based on the admission of this evidence, Ford argues that the excluded testimony was merely cumulative. In Ford's view, the jury ultimately heard Myers testify that she would not have driven the van if adequately warned, mitigating any evidentiary error.

It is true that to prevail on appeal, Bagnell must show *harmful* error, and the erroneous exclusion of cumulative evidence is generally harmless.[15] But "[q]ualified jurors under oath are presumed to follow the trial court's instructions."[16] Although Myers eventually testified that she would have heeded a warning, this statement came immediately after the trial court characterized similar evidence as speculative and told the jury to disregard Myers' testimony "about what she might have done if she had seen" a warning. Because jurors presumably complied with this instruction, they may have discounted the causation testimony eventually admitted by the trial court.[17]

Given the jury's ultimate finding that Bagnell failed to prove causation, we cannot conclude that the trial court's error was harmless.[18] Accordingly, we must reverse the judgment for Ford.

### Case No. A09A0070

In its cross-appeal, Ford challenges several rulings that remain at issue following our reversal in the main appeal. We find no error.

3. Ironically, Ford first argues that the trial court should have directed a verdict on the failure-to-warn claim because Bagnell offered no evidence of causation. Ford points to Myers' testimony that she did not look for any warnings in the van and did not review the owner's manual. It also argues that Myers knew well before the wreck that the ten-year-old vehicle had various mechanical and tire problems.

---

[15] See *Murray v. Barrett*, 257 Ga. App. 438, 439 (1) (571 SE2d 448) (2002).

[16] (Citation and punctuation omitted.) *Mobley v. Wright*, 253 Ga. App. 335, 336-337 (2) (559 SE2d 78) (2002).

[17] Id.

[18] See *Murray*, supra (evidentiary error harmless where it is highly probable that the error did not contribute to the judgment).

Bagnell, however, presented evidence that the van had a high center of gravity and lacked stability when fully loaded. And she offered evidence that Myers would not have driven the van if she had been warned about the instability. Such testimony created a jury question as to whether Myers would have followed a warning if one had been provided — the key element of causation in a failure-to-warn claim.[19] The trial court, therefore, properly denied Ford's motion for a directed verdict on this issue.[20]

4. Ford also argues that the trial court should have imposed sanctions on Bagnell because she failed to preserve the van following the wreck. In essence, it claims that the trial court was required to issue some sort of sanction, such as dismissing the case or excluding Bagnell's evidence. We disagree.

A trial court has wide discretion in resolving spoliation issues, and we will not disturb the court's ruling absent abuse.[21] Ultimately, the trial court must decide whether to issue sanctions for spoliation.[22] Before exercising its discretion, however, the court should weigh five factors:

> (1) whether the party seeking sanctions was prejudiced as a result of the destruction of the evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the party who destroyed the evidence acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded.[23]

The record shows that the trial court thoroughly analyzed and considered these factors. It found that the van was an important piece of evidence, particularly in determining the cause of the wreck; that Ford was prejudiced by the van's destruction; and that the prejudice could not be cured. It also concluded, however, that the spoliation resulted from negligence, rather than bad faith. Moreover, because the van was lost or destroyed shortly after the wreck, neither side had an opportunity to inspect it, placing all parties "on

---

[19] See *Saenz*, supra at 357-358; see also *Jobe v. Penske Truck Leasing Corp.*, 882 SW2d 447, 451 (Tex. App. 1994) (claimant's testimony that he would have read and heeded warning if one had been provided created question of fact regarding causation on his failure-to-warn claim).

[20] See *Tensar Earth Technologies v. City of Atlanta*, 267 Ga. App. 45, 53 (5) (598 SE2d 815) (2004) (trial court can direct a verdict only if no conflict in the material evidence remains and the evidence demands a certain verdict).

[21] *AMLI Residential Properties v. Ga. Power Co.*, 293 Ga. App. 358 (667 SE2d 150) (2008).

[22] Id. at 361 (1).

[23] (Citation and punctuation omitted.) Id.

equal footing" and limiting any potential for abuse through expert testimony.

After considering the required factors, the trial court decided not to impose spoliation sanctions on Bagnell because, despite the loss of evidence, all parties remained on a level playing field. Although another factfinder might have resolved the spoliation issue differently, we find no abuse of discretion.[24]

5. Finally, Ford claims that the trial court erred in denying its motion in limine to exclude evidence regarding Value Rent-a-Car's fleet of Aerostar vans. Over Ford's objection, the trial court admitted evidence that in 1992, Value asked Ford about the Aerostar's safety record after its Aerostar renters "experienced a number of accidents involving rollover incidents." Value also proposed placing a warning label in the vans stating that the vehicle handled differently than a typical car and that failure to operate it correctly could result in loss of control or rollover. In response, Ford defended the Aerostar's safety and asserted that no warning was necessary. It further suggested, however, that if Value placed a warning in the van, the warning should advise renters that the vehicle handled differently "especially when fully loaded with passengers and/or luggage."

Ford argues that this evidence should have been excluded as irrelevant. A trial court's evidentiary rulings, however, will not be reversed absent an abuse of discretion.[25] In this case, we agree with the trial court that the Value evidence — and particularly Ford's unsolicited suggestion that Value advise renters that the van handled differently when filled with passengers and luggage — was relevant to Ford's knowledge of a stability hazard in a fully loaded Aerostar van.[26]

Noting that the correspondence with Value took place in 1992 and 1993, Ford argues that the evidence opened it to liability for a post-sale duty to warn not recognized under Texas law.[27] The trial court, however, determined that Ford owed no such duty, and it specifically instructed jurors that a manufacturer is not required to warn of dangers discovered after a product leaves the manufacturer's control. Jurors, therefore, were well aware that Ford could not be held liable unless it knew of a stability hazard before it sold the van.

---

[24] See id. ("Whether [spoliation] remedies are warranted is a matter for the trial court to decide.") (citation and punctuation omitted).

[25] *Lindsey v. Turner*, 279 Ga. App. 595, 597 (2) (631 SE2d 789) (2006).

[26] See *Shoppers World v. Villarreal*, 518 SW2d 913, 917 (Tex. App. 1975) (to prove that manufacturer failed to warn of a product defect, claimant must show that manufacturer had actual or constructive knowledge of defect).

[27] See *Dion v. Ford Motor Co.*, 804 SW2d 302, 310 (Tex. App. 1991).

Moreover, Bagnell offered expert testimony that Ford in fact knew about the hazard prior to the van's initial sale date. Although made post-sale, Ford's unsolicited statements in the Value correspondence lent credibility to this testimony and supported the jury's finding of knowledge. The trial court, therefore, did not abuse its discretion in deeming the Value evidence relevant.[28]

Ford also argues that because the evidence referenced other rollover incidents, Bagnell was required — but failed — to establish the necessary foundation for admitting other "similar incidents" in a products liability case.[29] We recognize that the initial correspondence from Value vaguely referenced "rollover incidents." But the Value evidence was not admitted to prove these other incidents or to show that they placed Ford on notice of a hazard.[30] Instead, it was admitted to demonstrate that Ford drew Value's attention to handling problems in a fully loaded van. Other incidents were not at issue.

Finally, we find no merit in Ford's claim that the Value evidence consisted of inadmissible lay opinions from Value employees regarding the Aerostar's stability. Again, the evidence was admitted to demonstrate Ford's response to Value's concerns about the van. The trial court did not abuse its discretion in finding the evidence relevant and admissible for this purpose.[31]

*Judgment reversed in Case No. A09A0069. Judgment affirmed in Case No. A09A0070. Ellington and Mikell, JJ., concur.*

DECIDED APRIL 16, 2009 —
RECONSIDERATION DENIED MAY 14, 2009.

*Cooper, Jones & Cooper, Lance A. Cooper, Scott B. Cooper*, for appellants.

*Mabry & McClelland, Walter B. McClelland, McKenna, Long &*

---

[28] See *Lindsey*, supra. ("[I]f the evidence offered by a party is of doubtful relevancy, it should nevertheless be admitted and its weight left to the jury.") (citation and punctuation omitted).

[29] See *Cooper Tire &c. Co. v. Crosby*, 273 Ga. 454, 455 (1) (543 SE2d 21) (2001) ("In products liability cases, the 'rule of substantial similarity' prohibits the admission into evidence of other transactions, occurrences, or claims unless the proponent first shows that there is a 'substantial similarity' between the other transactions, occurrences, or claims and the claim at issue in the litigation.").

[30] See *Stovall v. DaimlerChrysler Motors Corp.*, 270 Ga. App. 791, 792-793 (1) (608 SE2d 245) (2004) (evidence of other incidents involving a product may be admissible and relevant to whether the manufacturer had notice of a product defect).

[31] See *Lindsey*, supra.

*Aldridge, Jeremy M. Moeser, Michael R. Boorman*, for appellees.