A00A2110. JOHNSON et al. v. RIVERDALE ANESTHESIA
ASSOCIATES, P.C. et al.
(547 SE2d 347)

RUFFIN, Judge.

Claire Johnson suffered a severe allergic reaction to general anesthesia she received during surgery. The reaction caused brain damage, and Johnson ultimately died. Claire Johnson's husband, Donald Johnson, and the administratrix of her estate, Donna Hood, sued the anesthesiologist, Dr. Robert Lawhead, and his employer, Riverdale Anesthesia Associates, P.C. (Riverdale), for medical malpractice. Following a trial, the jury found in favor of Dr. Lawhead and Riverdale. The plaintiffs appeal, challenging the trial court's ruling on a motion in limine and the court's refusal to give a requested jury instruction. Finding no error, we affirm.

1. Plaintiffs alleged that Dr. Lawhead committed medical malpractice by failing to pre-oxygenate Claire Johnson. In pre-oxygenation, a surgery patient is administered pure oxygen prior to surgery to provide an oxygen reserve during surgery. The defendants moved, in limine, for the court to prevent plaintiffs from asking defendants' medical expert, Dr. Robert Caplan, whether he, personally, would have pre-oxygenated Johnson.[1] The trial court granted the motion, and on appeal plaintiffs assert the ruling was erroneous. We disagree.

In a medical malpractice action, "[t]he applicable standard of care is that employed by the medical profession generally and not what one individual doctor thought was advisable or would have done under the circumstances."[2] The determination of whether evidence is relevant to this standard of care or should be excluded as irrelevant or unduly prejudicial evidence is within the discretion of the trial court.[3] Inasmuch as the evidence here concerned what Dr.

---

[1] In an offer of proof made outside the jury's presence, plaintiffs established that Dr. Caplan would have pre-oxygenated Johnson.

[2] *McNabb v. Landis*, 223 Ga. App. 894, 896 (5) (479 SE2d 194) (1996).

[3] See id.

Caplan personally would have done, the trial court did not abuse its discretion in excluding it.[4]

Plaintiffs also assert that the trial court abused its discretion in ruling that defendants did not open the door for such testimony by questioning their own witness about the matter.[5] In support of this assertion, plaintiffs point to Dr. Caplan's testimony where he stated that there was nothing Dr. Lawhead could have done to make it safer for Johnson to have the anesthesia. When plaintiffs objected to this testimony, the trial judge explained that plaintiffs were free to question Dr. Caplan about whether he believed pre-oxygenating Johnson would have made a difference and that her ruling in limine merely prohibited the parties from asking the expert whether he "would have personally done it." Because Dr. Caplan's testimony did not touch upon what he would have personally done, we find no abuse in the trial court's ruling.

Finally, plaintiffs argue that defendants opened the door when Dr. Lawhead testified that he did not believe Johnson was a candidate for pre-oxygenation. We note initially that plaintiffs have not shown that they raised this argument during the course of the trial, which generally precludes review of the issue.[6] Furthermore, because Dr. Lawhead testified as a defendant, and not as an expert witness, it is unclear how his testimony about his own beliefs could have violated the court's ruling in limine. Finally, we find no merit in plaintiffs' argument that they should have been permitted to ask Dr. Caplan if he would have pre-oxygenated Johnson, in order to impeach Dr. Lawhead's testimony that Johnson was not a candidate for pre-oxygenation. It was for the jury to decide whether Dr. Lawhead's determination in this regard violated the standard of care, and, as stated above, Dr. Caplan's personal practices and beliefs were irrelevant.[7]

2. The evidence at trial showed that after Dr. Lawhead administered the anesthesia, Claire Johnson immediately suffered complications that deprived her of adequate oxygen. For approximately ten to fifteen minutes, Dr. Lawhead and other health care professionals attempted to restore Johnson's oxygen supply. Although Dr. Lawhead

---

[4] See id.

[5] Plaintiffs argue that in one such instance defendants questioned their own witness, Dr. Richard Lodise, whether he would have pre-oxygenated Johnson. We have carefully scrutinized that portion of the transcript cited by plaintiffs, however, and find that the questioning was strictly limited to the standard of care. Thus, inasmuch as the argument is unsupported by the record, it has no merit.

[6] We do not consider "arguments neither raised nor ruled on by the court below and that are asserted for the first time on appeal." (Punctuation omitted.) *Leal v. Hobbs*, 245 Ga. App. 443, 447 (2) (b) (538 SE2d 89) (2000).

[7] See *McNabb*, supra.

eventually succeeded, the temporary lack of oxygen caused catastrophic brain damage.

During the time that Dr. Lawhead was responding to Johnson's initial respiratory complications, he did not record her vital signs on his chart. However, Johnson's vital signs were being monitored and recorded by a device called a Datex monitor. Although Dr. Lawhead could have printed the vital signs data at the end of the procedure, he did not do so. Plaintiffs characterized Dr. Lawhead's failure to print the Datex data as the spoliation of evidence and requested the court to charge the jury that spoliation of evidence creates a presumption that "the evidence would have been harmful to the spoliator [sic]." The court denied plaintiffs' request, and the plaintiffs assert the decision was erroneous. We disagree.

As a general rule, "[i]n order for a refusal to charge to be error, the requests must be entirely correct and accurate, and adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge."[8] The spoliation charge at issue here is grounded in OCGA § 24-4-22, which provides:

> If a party has evidence in his power and within his reach by which he may repel a claim or charge against him but omits to produce it, or if he has more certain and satisfactory evidence in his power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against him is well founded; but this presumption may be rebutted.

In *Cotton States Fertilizer Co. v. Childs*,[9] the Supreme Court cautioned that the presumption set forth in OCGA § 24-4-22 can be given as a "charge only in exceptional cases," that "the greatest caution must be exercised in its application," and that "[e]ach case must stand upon its own particular facts." In determining if the charge is warranted, there are several factors that a court may consider, including whether the party seeking the charge "was prejudiced as a result of the destruction of the evidence."[10]

In this case, it is undisputed that Dr. Lawhead's chart was missing vital signs data for the 15-minute period during which he was attempting to provide Johnson with oxygen and that the Datex monitor recorded this information. In their appellate brief, plaintiffs repeatedly assert that they were prejudiced by this missing data. Plaintiffs have not pointed to any *evidence*, however, which suggests

---

[8] (Punctuation omitted.) *Lee v. Bartusek*, 205 Ga. App. 551 (1) (422 SE2d 570) (1992).

[9] 179 Ga. 23, 31 (174 SE 708) (1934).

[10] See *Chapman v. Auto Owners Ins. Co.*, 220 Ga. App. 539, 542 (469 SE2d 783) (1996).

what they might have proven with the missing data or, moreover, that their expert was hindered by the missing data in forming his opinion of professional negligence. To the contrary, when questioned at trial, plaintiffs' medical expert acknowledged that when he reviewed the case and developed his opinion, he did not have any problem with Dr. Lawhead's charting.

It is also appropriate to consider whether the party who destroyed the evidence acted in good or bad faith.[11] This is a relevant consideration because one of the rationales for the presumption is that it "deter[s] parties from pretrial spoliation of evidence and 'serves as a penalty, placing the risk of an erroneous judgment on the party that *wrongfully* created the risk.' "[12] But, "[a] party should only be penalized for destroying documents if it was wrong to do so."[13]

In this case, we have not been provided with any explanation for Dr. Lawhead's failure to retrieve the vital signs data from the Datex monitor. The parties have also not pointed to any evidence which establishes whether the standard of care requires the preservation of such data. Without such evidence, we will rely on the "presumption that professionals perform their professional services in an ordinarily skillful manner."[14] Accordingly, we conclude that Dr. Lawhead did not deviate from the standard of care by failing to record or print the information on the Datex monitor.[15]

Under these circumstances, and in light of the warning that the presumption charge should be given only in exceptional cases,[16] we conclude that the trial court did not err in refusing to instruct the jury as requested.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 23, 2001 —
RECONSIDERATION DENIED APRIL 12, 2001 

*Hill & Bleiberg, Gary Hill, Evans & Evans, Larry K. Evans,* for appellants.

---

[11] See id.

[12] (Emphasis supplied.) *Welsh v. United States*, 844 F2d 1239, 1246 (6th Cir. 1988).

[13] *Akiona v. United States*, 938 F2d 158, 161 (9th Cir. 1991).

[14] *Wilson v. Muhanna*, 213 Ga. App. 704, 705-706 (1) (445 SE2d 540) (1994) (physical precedent only).

[15] See id. For a general discussion of cases considering whether a presumption should arise from the intentional or negligent failure of a health care provider to produce medical records see Fischer, Annotation, Medical Malpractice: Presumption or Inference from Failure of Hospital or Doctor to Produce Relevant Medical Records, 69 ALR4th 906 (2000).

[16] See *Childs*, supra at 31.

*Harman, Owen, Saunders & Sweeney, H. Andrew Owen, Jr.,* for appellees.