**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 21, 2024**

# In the Court of Appeals of Georgia

A24A0695, A24A0696. CITY OF ATLANTA v. PERKINS; and vice versa.

HODGES, Judge.

This case involves negligence and nuisance claims brought by Gregory Theodore Perkins against the City of Atlanta. Perkins alleged he was injured when he stepped on a City water meter lid that flipped into the water meter box, causing him to fall. A jury awarded nearly $2.4 million to Perkins. In Case Number A24A0695, the City appeals the trial court's imposition of spoliation sanctions and the admission of certain evidence. In Case Number A24A0696, Perkins appeals the trial court's decision granting the City's motion for judgment notwithstanding the verdict and overturning the jury's award of OCGA § 13-6-11 attorney fees to him. For the reasons that follow, we affirm in both cases.

The record shows that the City owns and maintains a complex water system, containing approximately 160,000 water meters, to provide water service to City residents. Meters are underground boxes that house water-usage measuring components and are usually covered by an oval or round metal lid. In 2005 or 2006, the City began modernizing the water meter system and contracted with private companies, including K&V Meter Automation, LLC ("K&V"), to update the system to an automated reader and fit the boxes with new or retrofitted lids to assist in the automated meter reading. During the modernization, various box sizes were used that required different types of lids. One lid measured 18 1/8 inches by 9 7/8 inches ("the smaller-sized lid") while another measured 19 1/4 inches by 9 1/4 inches ("the larger-sized lid"). The lids also varied in how they secured to the boxes: lids had zero, two, or four prongs, and some of the lids had locking mechanisms while others did not.

Jonathan Webb, an area supervisor for the City, deposed that the City instructed Watershed Department employees to replace the existing lids with better-fitting lids, especially if the employee observed an ill-fitting lid. Natalie Knight, a City representative designated under OCGA § 9-11-30 (b) (6), and Lance Hollis, a senior City inspector, confirmed this directive. The specific instruction was to follow the

2

specifications requiring lids to fit securely without rocking and to replace lids that did not properly fit. Lid replacement was not always documented, but the City replaced "[p]robably a thousand" ill-fitting lids. The City was well aware that meter lid fit was a problem in the City and sent postcards to all its customers urging them to report meter lid issues, which customers did, but the City knew there were still thousands of lids that did not fit the boxes correctly.

In fact, in 2007, the City Auditor's Office estimated that out of a sample size of 138 of the 12,377 small meters installed, 41 percent "had a lid that didn't fit" and 72 percent "had an unlock[ed] lid[.]" "Many of the meter sites . . . observed had noticeable gaps between the meter box and lid." The Auditor's Office determined that meter lids that did not fit meter boxes could cause a potentially hazardous condition and recommended that the City perform periodic inspections. The City auditor informed the City that relying on customer reports regarding ill-fitting lids was inadequate and recommended that the City devise a maintenance plan to identify the ill-fitting lids and correct them.

Gwendolyn Burns, a City claims advisor and 30 (b) (6) representative, testified that the City was well aware that a lid that did not fit the water meter box would have

a natural tendency to flip when someone stepped on it. She deposed that the City had general knowledge that there was a lid problem and that the lids did not always fit the meter boxes that K&V installed. In 2012, Burns wrote: "Although there is no record notice to meter problems at the subject location [where Perkins fell], the City was well aware that it had several thousand meters that were improperly covered with the incorrect meter lid size creating hazardous meter conditions." Hollis likewise testified that lids that were too small for the meter box could flip if stepped on.

Angelena Kelly, a former City claims investigator, deposed that she investigated numerous claims of injuries allegedly received by individuals after "stepping onto a defective water meter [or ill-fitting lid] that was installed by K&V Automation" prior to Perkins' accident. Kelly found "liability probable due to lid issue with K&V" on most occasions.

On September 3, 2011, Perkins was driving to visit family when he encountered a fallen tree limb in the road. He stopped and dragged the tree branch onto the residential property at 1814 Dodson Drive in Atlanta. While moving the branch, Perkins walked backwards, glancing back and watching for the curb as he backed up. Perkins claims he stepped on a water meter and the lid "kind of slipped away" under

his weight, allegedly causing him to fall into the water meter pit and tearing his left knee quadricep tendon. It is undisputed that this water meter and lid was part of the City's waterworks system. Perkins' daughter took photographs of the site later that day.

Immediately following the incident, Perkins spoke with Warren Hayes, the City claims investigator subsequently assigned to his claim, who explained the claims procedure to him. On September 9, 2011, six days after the incident, Perkins filed a claim report with the City. The claim report noted that Perkins stopped to remove a limb which was blocking the street and, as he moved the limb, he stepped on a water meter cover located at 1814 Dodson Drive in Atlanta, fell to the ground, and heard something pop in his leg. The City opened an investigation, informing Perkins of this action in a letter dated September 28, 2011.[1] According to Hayes, Perkins "was very persistent" and called "possibly every other day, definitely more than twice a week."

On November 7 or 8, 2011, Webb visited the property, took photographs of the water meter and lid, and stepped on the lid to assess its safety. He did not lift the lid

---

[1] The City ultimately denied Perkins' claim on the ground that he failed to provide medical records.

off the box or remove the lid. Webb was not told that someone had been injured while walking on the water meter; he believed he was looking for "the lid to be missing when they sent [him] out there." Webb spent approximately five or ten minutes at the site and determined that the lid was the correct size and securely fit the meter box. Webb purportedly forwarded his photographs to Hayes, but Hayes denied receiving any photographs, and the City could not locate the photographs taken by Webb.

Less than two months later, someone else took a picture of the water meter lid at 1814 Dodson Drive. Webb was shown the picture during his deposition. Webb could not recall what size lid was on the water meter when he inspected it, but deposed that the picture taken two months after his investigation did not appear to depict the same lid that he inspected. When shown two pictures of lids, Webb stated that he believed one picture depicted an exemplar of "the original lid that was probably on that box[,]" but then stated that he could not "be sure of that, which lid[,]" and he admitted that the photographed lid found on the water meter box two months after his inspection was a different lid. He surmised that it was "probable" that someone switched the lid on the water meter box after his inspection.

6

In 2013, Perkins hired an attorney and his attorney and an expert examined the lid at 1814 Dodson Drive. It was determined that the smaller-sized lid was on the water meter box at that time. The expert noted that the smaller-sized lid covering the water meter box had the possibility of flipping or tipping into the box when he stepped on it. Perkins subsequently filed a complaint in Fulton County State Court, alleging negligence, nuisance, and vicarious liability against the City. In short, the complaint asserted that Perkins suffered injuries after stepping on a water meter lid that was too small for the meter box.

In April 2014, Brian Spencer, another city inspector, visited the property and photographed the lid. Spencer reported that the lid was locked and fit the meter box, but he replaced it with a new lid as instructed by his supervisor. He discovered "lots of debris in the box" and a broken "piece of lid" inside the meter box. Spencer brought the lid he replaced and the broken piece to the City Watershed Management facility, and it was then transferred and stored with the legal department. The lid purportedly stored at the legal department was the smaller-sized lid. It is undisputed that the City could not locate the photographs Spencer took.

In addition, Wole Ralph, a City 30 (b) (6) representative, deposed that the City was unable to locate the lid that Spencer removed. Ralph stated in his deposition: "We don't have that. We have lids of similar size and dimension — of the same size and dimension. We don't have that actual lid." Ralph did not know what happened to the actual lid Spencer removed but assumed it had been lost. When asked, "And it is the position of the City of Atlanta today that the lid is lost?" Ralph responded, "That the lid — yes, the lid is not accessible. . . . [R]ight now, we are not able to put our hands on the lid." The City brought two lids to the deposition and claimed one of the lids was the same type as the lid Spencer removed from the water meter at issue in 2014. Ralph, however, conceded that he did not know whether the lid recovered in 2014 was the same lid present at the time of Perkins' accident, and the City conceded in its response to Perkins' spoliation motion that although Perkins "was operating under the assumption . . . that the Brian Spencer lid is the same lid on which [he] fell[,] . . . [t]he City has not adopted this assumption. . . . The City still cannot take the position that the Brian Spencer lid is without a doubt the original lid on which [Perkins] fell." Ralph further deposed that some City inspectors would replace water meter lids without a work order and without informing the City.

In 2019, Perkins filed a motion for spoliation of evidence and asked for sanctions against the City. He argued that the City lost or destroyed: (i) the meter lid on which Perkins stepped on September 3, 2011; (ii) photographs Webb took in November 2011; and (iii) photographs Spencer took in April 2014. Perkins asserted that the City had a duty to preserve the lid and photographs, and the loss or destruction of this evidence prejudiced his case. The City opposed the motion, claiming that Perkins did not need the lid to prove his claims and was not prejudiced by the lack of photographs since he had other pre-suit photographs.

The trial court issued a 37-page order granting Perkins' spoliation motion. Specifically, the trial court found that the City had a duty to preserve the water meter lid and photographs:

> Once the City became aware of Plaintiff's claim and began to investigate, it had a duty to preserve its photographs of the meter lid and the way it fit or did not fit on the meter box, as well as the actual water meter lid, and should have taken all precautions to obtain, maintain, and then preserve the meter lid itself as well as any and all photographs of the meter lid.

The court then weighed a number of factors, including the prejudice suffered by Perkins as a result of the City's spoliation of the original water meter lid because Perkins could not counter evidence that the lid was safe:

> The opportunity for testing by Plaintiff's experts has been lost forever[, and a]s a result, any examination, analysis, and testing on any exemplar meter lids that have now been provided simply will not bear the same results as those borne from any testing, examination, and analysis of the September 2011 meter lid and would create insufficient and misleading facts for the jury. Any jury verdict would be based on conjecture and guesswork.

The trial court further found that Perkins was prejudiced by the loss of the City inspectors' photographs because Perkins could have found defects in the lid based on those photographs and the inspectors' reports do not give full, detailed summaries of the inspections.

> The trial court implemented the following sanctions:

> [(i) t]he City will be precluded from calling any witnesses to present testimony and/or evidence that the small lid was fine, had no problems, fit securely, and/or was able to be locked in, or presenting any evidence that would tend to refute the theory that it was negligent in 1) maintaining the meter lid and box and 2) safely and securely covering the

10

water meter box in question. The City, however, will be allowed to defend on the issues of comparative fault, causation, and damages. . . .

[(ii) t]he jury will be instructed that the small water meter lid covered the meter box on September 3, 2011. The jury will also be instructed that the water meter lid did not fit properly on the meter box, and when Plaintiff stepped on the lid, it flipped, caused him to fall, and allegedly resulted in his injuries. . . .

[(iii)] since the Inspectors' photographs are either lost or destroyed and Plaintiff's effective cross-examination of Inspector Spencer would be greatly hampered by the absence of the photographs taken by him, Inspector Spencer is precluded from testifying for any and all purposes.

The court also excluded introduction into evidence of a lid similar to the one Spencer fell on in 2014.

In 2022, the City filed a number of motions in limine, including motions to exclude evidence or arguments regarding: (i) other civil lawsuits, claims, or administrative proceedings against the City; (ii) other water meter claim injuries that allegedly occurred because of ill-fitting water meter lids; and (iii) other lawsuits against the City related to allegedly ill-fitting water meter lids. The City also sought to exclude any reference to the facts and circumstances surrounding the trial court's

11

spoliation ruling. Following a hearing, the trial court granted in part and denied in part the City's motions. While the court determined that no mention of spoliation was warranted, the court allowed Perkins to present evidence that there were "thousand[s] of instances that [the City] knew about" regarding alleged problems with other water meter lids to demonstrate comparative fault and show that the City had notice and knowledge of ill-fitting lids.

A jury trial was held in March of 2022. The following stipulation was read to the jury based on the spoliation and motion in limine orders:

> The parties have stipulated that the small water meter lid, 18 by one-eighth inches long by nine and seven-eighth inches wide, was similar to the lid that was on the meter box when plaintiff was allegedly injured. The jury will be instructed that the small water meter lid covered the meter box on September 3rd, 2011. The jury is being instructed that the water meter lid did not fit properly on the meter box, and when plaintiff stepped on the lid, it flipped, caused him to fall, and allegedly resulted in the injuries he's claiming today.

The City did not object to the reading of this stipulation or the trial court's jury instructions containing a similar stipulation.

The jury returned a verdict in Perkins' favor, awarding $2,361,700 in damages for negligence and nuisance and $944,680 in attorney fees, and the trial court issued a final judgment based on those amounts. The City subsequently filed a motion for judgment notwithstanding the verdict or, alternatively, motion for new trial, arguing, in part, that Perkins was not entitled to attorney fees under OCGA § 13-6-11. The trial court granted that portion of the motion, overturning the attorney fees awarded because Perkins did not plead such fees in his complaint or amended complaint, but denied the remainder of the motion.[2] These appeals followed.

*Case No. A24A0695*

In this appeal, the City argues that the trial court abused its discretion in concluding that Perkins proved the City lost or destroyed the lid and imposing a draconian spoliation sanction. The City further argues that the trial court erred in admitting evidence at trial of alleged problems regarding other water meter lids and other water meters. We find no merit in either argument.

1. We turn first to the City's argument regarding the trial court's finding of spoliation and its imposition of sanctions. "Spoliation refers to the destruction or

---

[2] The court further found that attorney fees were not proper under OCGA § 9-15-14 because the City's defenses contained several justiciable issues of law and did not lack substantial justification. Perkins does not appeal this ruling.

failure to preserve evidence that is relevant to contemplated or pending litigation. Such conduct may create the rebuttable presumption that the evidence would have been harmful to the spoliator." (Citation and punctuation omitted.) *United Parcel Svc. of America v. Whitlock*, 366 Ga. App. 542, 554 (2) (a) (883 SE2d 556) (2023). To prove that spoliation has occurred, the moving party must establish that the evidence in question was "key" or "necessary" to the litigation. *Bridgestone/Firestone North American Tire v. Campbell*, 258 Ga. App. 767, 768 (574 SE2d 923) (2002). The moving party must also demonstrate that the non-moving party had control of the evidence and was under a duty to preserve the evidence at issue. *Phillips v. Harmon*, 297 Ga. 386, 394, 396 (II) (774 SE2d 596) (2015). The duty to preserve relevant evidence arises when litigation becomes "reasonably foreseeable" to the nonmoving party, such as when a plaintiff provides notice of a claim. Id. at 396-397 (II). "A trial court has wide discretion in adjudicating spoliation issues, and such discretion will not be disturbed absent abuse." (Citation and punctuation omitted.) *Whitlock*, 366 Ga. App. at 554 (2) (a); see also *AMLI Residential Properties v. Ga. Power Co.*, 293 Ga. App. 358 (667 SE2d 150) (2008) (noting that this Court "will not disturb a trial court's

imposition of sanctions for evidence spoliation unless the court abused its discretion") (citation and punctuation omitted).

Here, the City does not assert that the water meter lid on which Perkins fell on September 3, 2011 was not relevant, key, or necessary to the litigation. Indeed, it is critical to the litigation which alleges that the lid did not fit properly and this improper fit caused Perkins' injuries. In addition, the City does not argue that the water meter and lid were not in its control. Indeed, it is undisputed that the water meter and lid at 1814 Dodson Drive were a part of the City's water system. Moreover, the City does not argue that litigation was not reasonably foreseeable at the time the relevant lid was lost or destroyed. In fact, the record shows that immediately following his accident, Perkins spoke with a City claims investigator about the incident, and six days later Perkins submitted a claim regarding the incident. He was then very persistent about his claim, calling nearly every other day. Clearly, the City had notice that litigation was reasonably foreseeable at that point and had a duty to preserve relevant evidence, including the water meter lid in place at the time of Perkins' fall, yet it failed to preserve the lid at that time. See *Cooper Tire & Rubber Co. v. Koch*, 303 Ga. 336, 341-

342 (2) (c) (812 SE2d 256) (2018) (concluding that a party's duty to preserve relevant evidence in its control arises when that party actually anticipates or reasonably should anticipate litigation). Instead, the City inexplicably argues — despite a wealth of evidence to the contrary — that it did not lose or destroy the relevant water meter lid. This argument lacks merit.

(a) The City first asserts that the trial court failed to view the evidence in the light most favorable to it, as the nonmoving party, in deciding that the City lost or destroyed the lid present during Perkins' accident. We find no error in the standard of review used by the trial court or the court's decision using that standard of review.

In its reply brief, the City cites to a recent opinion discussing the applicable standard of review when a trial court considers a spoliation motion without holding an evidentiary hearing: *Golden Pantry Food Stores v. Bradley*, 371 Ga. App. 374 (899 SE2d 724) (2024). In that case, we reiterated that, when deciding a pre-trial motion for spoliation sanctions without an evidentiary hearing to determine the credibility of witnesses, a trial court must review the motion under the standard applicable to a motion for summary judgment: The party opposing the motion is entitled to have the evidence in the record viewed in the light most favorable to it and to have all

reasonable inferences from the evidence drawn in its favor. Id. at 375. We vacated the trial court's orders granting the motions for spoliation after noting that "the trial court d[id] not state the standard of review it employed" and finding that the court failed to employ the proper standard of review. Id. at 375-376.

In this case, the trial court expressly stated the standard of review it applied in its extremely thorough, 37-page order on the spoliation motion:

> The relevant facts here must be viewed favorably to the City, as the party opposing the spoliation motion. Where, as here, a party files a pre-trial motion for spoliation sanctions and the trial court considers matters outside of the pleadings, but does not hold an evidentiary hearing, the motion is properly reviewed under the standard applicable to a motion for summary judgment, and as the party opposing the motion, the non-movant is entitled to have the evidence in the record viewed in the light most favorable to it and to have all reasonable inferences from the evidence drawn in its favor. The Court has applied this standard to the facts of this case[.] (Citations and punctuation omitted.)

As stated above, this is the appropriate standard of review when the trial court considers a spoliation motion without holding an evidentiary hearing. Although the parties in this case dispute whether the trial court held an evidentiary hearing on the

17

spoliation motion,[3] we find that, pretermitting whether an evidentiary hearing was held, the City's arguments fail even using the more lenient summary judgment standard of review articulated by the trial court.[4]

Turning to the trial court's application of the summary judgment standard, the City argues on appeal that the court made erroneous findings and "simply ignored evidence showing the lid likely remained the same." It further argues that the evidence, when viewed in the light most favorable to the City, "demonstrates the City did not lose or destroy the lid" because the evidence infers that no City employee changed the water meter lid at issue and the lid Spencer recovered in 2014 was the same smaller-sized lid present when Perkins allegedly injured himself in 2011. We disagree with the City's arguments for a number of reasons.

First, although the City argues that the lid Spencer removed in 2014 likely remained the same as the one on the water meter at the time of Perkins' fall in 2011,

---

[3] Citing the trial court's order — which indicated it considered arguments of counsel and the case record — the City claims the trial court granted Perkins' motion "without holding an evidentiary hearing." Perkins, on the other hand, asserts, without providing any relevant record or transcript citations, that the trial court held at least two hearings on the motion and received evidence (including photographs) during the hearings.

[4] If an evidentiary hearing had been held, where the trial court could adjudge the credibility of the witnesses, this Court would apply the more stringent abuse of discretion standard. See, e.g., *Koch*, 303 Ga. at 343-344 (3).

the City's own admissions counter this argument. The City admitted that it could not "conclusively say which of . . . two lids was in place" at the time of Perkins' accident. See *Versico, Inc. v. Engineered Fabrics Corp.*, 238 Ga. App. 837, 839 (1) (520 SE2d 505) (1999) (finding that party made admissions in its court pleadings that could not be contradicted by other evidence unless the admissions were withdrawn or amended on formal motion). In fact, the City specifically conceded that it could not take the position that the lid Spencer removed was the original lid on the water meter when Perkins fell.

Second, the record is undisputed that the City did not send someone to investigate the water meter lid at issue until nearly two months after Perkins filed his claim, and that investigator thought he was looking for a missing water meter lid. The investigator did not preserve the water meter lid at that time. Neither did he lift the lid off the water meter box during his investigation. Although the investigator deposed that the lid fit securely, he could not recall the size of the lid present during his investigation. The City claimed that the lid on the water meter "remained the Smaller-Sized Lid[,]" but it also admitted that the "Smaller-Sized Lid left a gap," and Webb specifically testified that the lid fit securely when he inspected it. Webb further

deposed that the lid photographed on the water meter box two months after his investigation was not the same lid he observed on the meter box, leading him to surmise that it was "more probable" that someone switched the lid on the water meter box after his inspection. And City agents testified that replaced water meter lids were not always documented by employees. In addition, years later Spencer visited the site and removed the lid that was present at that time. In so doing, he discovered "lots of debris" and "a piece of [a broken water meter] lid" inside the water meter box.[5] Even construing all of the evidence in the light most favorable to the City, this evidence submitted by the City's employees and agents counters its argument that the lid likely remained the same.

It is undisputed that the City took no steps to ensure that the original water meter lid was preserved, despite knowing that the lid was a critical piece of evidence in a matter where litigation was foreseeable within days of the incident, placing the City under a duty to preserve the relevant evidence. See *Koch*, 303 Ga. at 336. In fact, by its own admissions the City did not remove the water meter lid at 1814 Dodson Drive until years after Perkins' fall, and the City both refused to concede that the

---

[5] Neither party has cited to any evidence indicating whether the broken piece discovered inside the water meter was from a smaller or larger lid or how long the broken piece had been inside the water meter.

water meter lid removed by Spencer in 2014 was the lid on the meter at the time of Perkins' fall and, at the same time, argued that it should receive an inference that the lid removed by Spencer likely remained the same as the one at the time of Perkins' fall. The competing theories presented by the City highlight the fact that the City — as it conceded — did not definitively possess the actual lid that allegedly caused Perkins' injuries, evidence which the City was obligated to preserve once litigation was reasonably foreseeable. See *Koch*, 303 Ga. at 336.

In addition, the City does not address in its appellate briefs the trial court's finding that the lid Spencer removed in 2014 "would not have any probative value[.]" In light of testimony that City employees sometimes remove and replace lids without making an accurate record of such events, it was incumbent upon the City to preserve the lid at issue in this case, at least through photographs, as soon as possible before such vital evidence was lost forever, yet the City failed to timely preserve the water meter lid or the photographs of the lid taken by its investigators. Evidence supports the trial court's finding that "[t]he systematic problems exhibited in this case by [the City] in tracking and safeguarding of evidence precluded the adequate preservation of this evidence despite early and frequent notice that litigation would likely ensue."

Regardless of the City's arguments and the evidence in the record surrounding the authenticity of the lid Spencer removed in 2014, it is undisputed that the City was unable to produce the water meter lid Spencer removed or produce photographs Spencer and Webb took of the water meter lid during their investigations. In fact, one of the City's 30 (b) (6) witnesses specifically deposed on June 6, 2019 that the City could not locate the lid Spencer removed. It therefore strains credulity that the City argues in this case that it did not lose or destroy the lid.

Viewing the evidence in the light most favorable to the City, we find that the trial court did not abuse its discretion in finding that the water meter lid and the photographs were lost or destroyed by the City at a time when the City was under an obligation to preserve those items. The trial court did not make credibility determinations, compare *Golden Pantry*, 371 Ga. App. at 378, but, rather, properly used admissions and testimony by the City's agents in determining that spoliation occurred. See generally *AMLI*, 293 Ga. App. at 364 (1) (b) ("Ultimately, it is the actions of AMLI and its agents that establish the factual basis for the trial court's findings of prejudice and inability to cure."). The City's argument regarding the standard of review used by the trial court lacks merit.

(b) The City next argues that the trial court abused its discretion in imposing severe spoliation sanctions. It further asserts that these sanctions were inconsistent with the court's findings. We disagree.

> Where a party has destroyed or significantly altered evidence that is material to the litigation, the trial court has wide discretion to fashion sanctions on a case-by-case basis. For example, the trial court may remedy the prejudice by charging the jury that spoliation of evidence creates the rebuttable presumption that the evidence would have been harmful to the spoliator. The trial court may also be authorized to dismiss the case or to prevent that party's expert witnesses from testifying in any respect about the evidence. Whether remedies are warranted is a matter for the trial court to decide.

(Citations and punctuation omitted.) *AMLI*, 293 Ga. App. at 361 (1). "This is not an exhaustive list of sanctions a trial court may impose; rather, the trial court has wide latitude to fashion sanctions on a case-by-case basis, considering what is appropriate and fair under the circumstances." (Citation and punctuation omitted.) *Cowan Systems v. Collier*, 361 Ga. App. 823, 825-826 (865 SE2d 619) (2021). That said, severe sanctions, "such as an instruction to the jury to presume rebuttably that the evidence was adverse to the spoliating party's claim or defense, the entry of a default judgment, or the dismissal of the case," are generally reserved for cases in which a party "lost

23

or destroyed material evidence intentionally in bad faith and thereby prejudiced the opposing party in an uncurable way." (Citation and punctuation omitted.) Id. at 826.

In exercising its discretion to determine the appropriate penalty for spoliation, the trial court must weigh five factors:

> (1) whether the party seeking sanctions was prejudiced as a result of the [loss or] destruction of the evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the party who [lost or] destroyed the evidence acted in good or bad faith; and (5) the potential for abuse if expert testimony about the [lost or destroyed] evidence was not excluded.

(Citation and punctuation omitted.) *AMLI*, 293 Ga. App. at 361 (1). "Given the evidence presented, the trial court would have been authorized to dismiss [the City's answer][.]" *Campbell*, 258 Ga. App. at 771. The trial court, however, declined to do so, limiting the spoliation sanctions to the following:

> [(i) t]he City will be precluded from calling any witnesses to present testimony and/or evidence that the small lid was fine, had no problems, fit securely, and/or was able to be locked in, or presenting any evidence that would tend to refute the theory that it was negligent in 1) maintaining the meter lid and box and 2) safely and securely covering the water meter box in question. The City, however, will be allowed to defend on the issues of comparative fault, causation, and damages. . . .

[(ii) t]he jury will be instructed that the small water meter lid covered the meter box on September 3, 2011. The jury will also be instructed that the water meter lid did not fit properly on the meter box, and when Plaintiff stepped on the lid, it flipped, caused him to fall, and allegedly resulted in his injuries. . . .

[(iii)] since the Inspectors' photographs are either lost or destroyed and Plaintiff's effective cross-examination of Inspector Spencer would be greatly hampered by the absence of the photographs taken by him, Inspector Spencer is precluded from testifying for any and all purposes.

The court also excluded introduction into evidence of a lid similar to the one removed by Spencer. We conclude that the trial court exercised its discretion to craft a viable spoliation remedy, which we will not disturb on appeal.

(i) Turning to the first factor — whether the party seeking sanctions was prejudiced as a result of the loss or destruction of the evidence — we agree with the trial court that Perkins was prejudiced both by the City's inability to produce the water meter lid definitively present during his fall in 2011, as well as by the City's inability to produce the photographs Webb and Spencer took of the water meter lid during their investigations. The City claims that Perkins is not prejudiced because: (a) his expert could test the lid in the City's possession; and (b) the lid would obviate the

inadvertent loss of photographs to establish any defects in the meter lid. However, it is undisputed that Webb did not secure the lid when he investigated the scene two months after Perkins' fall. Moreover, the City does not address the trial court's finding that the lid Spencer removed years after Perkins' fall lacks probative value. In addition, even if the lid removed in 2014 had probative value, the City admitted it could not produce the lid Spencer removed in 2014, and even if it could produce the lid, the City refused to concede that the lid removed by Spencer was the same lid in place at the time of Perkins' fall.

As the trial court pointed out, the City's failure to produce the actual water meter lid, despite having a duty to do so following the claim Perkins filed within six days of the incident, prevented Perkins from examining whether there were any defects or issues with the actual — as opposed to a presumably similar — lid. We agree. Perkins' theory of causation rested entirely on the water meter lid that was on the water meter at the time of his fall on September 3, 2011. A lid that may be the same size as the one in place at the time of Perkins' fall would not have been subject to the same weathering conditions, debris accumulation, and foot traffic as the lid in place on September 3, 2011, so the lids likely would have different weight-bearing and

flipping tendencies, causing a jury to speculate about the lid's state, condition, fit, and tipping propensities. The evidence, even viewed in the light most favorable to the City, supported the trial court's determination that Perkins was prejudiced by the fact that testing could not be done on the actual water meter lid.

Likewise, the City's inability to produce Webb's lost photographs precluded Perkins from discovering and possibly establishing the size, condition, fit, and state of the water meter lid in place in November 2011, which could have served as a useful tool both to refresh Webb's memory about the lid he inspected and to challenge the validity of his finding that the lid was secure two months after Perkins' fall. In addition, the City's inability to produce the photographs Spencer took, even if relevant and probative, hampered any effective cross-examination of that witness.

"Under these circumstances, an examination of the actual [water meter lid or photographs taken by Webb and Spencer] would have significantly enhanced [Perkins'] ability" to prove his claim that the water meter lid gave way when he stepped on it and refute the City's defense that the water meter lid properly covered the water meter and did not constitute negligence or a nuisance. *Campbell*, 258 Ga.

App. at 769. Perkins was prejudiced by the City's loss or destruction of the water meter lid and photographs.

(ii) We next turn to whether the prejudice could be cured. Here, not only was the City unable to produce the actual water meter lid or the purportedly similar lid Spencer removed in 2014, but it also was unable to produce any of the photographs its investigators took. Although the City claims that Perkins had access to photographs taken by his daughter, a former City employee deposed that one cannot tell from pictures if a lid fits correctly because a picture cannot show if the lid is pushed correctly and one does not know the setting at the time the pictures were taken or the skill of the person who took the pictures. Perkins could have benefitted from photographs taken by actual City investigators who knew what to look for, and the prejudice could not be cured by photographs taken by Perkins' daughter. Moreover, the existence of photographs is not a substitute for the actual evidence. See *Campbell*, 258 Ga. App. at 769.

The City's failure to preserve the original water meter lid at a time when it was under a duty to do so, or to preserve Webb's photographs, foreclosed Perkins' ability to perform testing and refute Webb's testimony that the lid fit properly when he

examined it two months after the incident. At best, Perkins would have been left to cobble together a circumstantial case to rebut evidence based on Webb's investigation. See *AMLI*, 293 Ga. App. at 362 (1) (a) (ii). The prejudice to Perkins because he was unable to conduct testing on the actual water meter lid or view Webb's photographs of the lid could not be cured. Like the trial court, we find it difficult to

> see how the loss of the original lid and photographs taken by Webb on November 7, 2011, can be cured by the production of . . . Spencer's lid obtained in April 2014, some two and half (½) years after the injury. This is particularly true since it cannot be established that the . . . Spencer lid is the actual lid that was in place during the incident in question.

Regardless, the City conceded it could not locate and produce the lid Spencer removed, so that is a moot point.

Likewise, the City suggests that prejudice to Perkins could have been minimized through an effective cross-examination of Webb and Spencer without the lost photographs or through the testing of "exemplars of the Smaller-Sized Lid[.]" The actual lid and the photographs in this case, however, would have been crucial to an effective cross-examination or testing, and the City could not produce either. The City also asserts that the introduction of potential evidence of alleged problems with other

29

meters and lids could have been sufficient to cure the loss of the lid and photographs in this case. This is an interesting argument since the City appeals the trial court's introduction of evidence regarding other meters and lids at trial. See Division 2, infra. Regardless, evidence of other issues with water meter lids, while relevant, would not cure the City's loss of the actual water meter lid Perkins stepped on when he fell.

The trial court's finding that the prejudice to Perkins could not be cured is supported by the record, even when viewed in the light most favorable to Perkins.

(iii) Similarly, the third factor — the practical importance of the evidence — was met since the original water meter lid and/or photographs were critical to the underlying claim. Indeed, the City does not dispute this issue.

(iv) The fourth factor — whether the City acted in good or bad faith — is a bit more troubling. According to the trial court, "the spoliation resulting here essentially stem[med] from a lack of an effective system or proper protocols regarding the preservation of evidence in water meter lids and boxes cases as shown by the City in this case." The court noted that "[t]here was virtually no effort by [the City] to preserve the water meter lid and box in a timely manner in this matter, notwithstanding the receipt of the Ante Litem notice[,]" and the City "lost not one,

but two sets of photographs taken by Inspectors during their inspection of the water meter lid and box in question." Nevertheless, the trial court concluded that the City's loss of the evidence was not "caused by any intentional or malicious acts of the City."

The City argues that because the loss of this evidence was caused by negligence rather than any malicious intent, the court should have fashioned less severe spoliation sanctions. We find no abuse of the trial court's discretion in fashioning the spoliation sanctions it imposed.

As this Court repeatedly has stated, "[e]xclusionary sanctions may be appropriate where the spoliator has not acted in bad faith." *AMLI*, 293 Ga. App. at 363 (1) (a) (iii). In fact, a showing of malice is not always required even when imposing the harsh sanction of dismissal, see *Campbell*, 258 Ga. App. at 770, and here the trial court did not impose the harshest sanction of dismissal. To determine whether sanctions for spoliation are warranted, the trial court must merely "weigh the degree of the spoliator's culpability against the prejudice to the opposing party." Id. And, contrary to the City's contentions on appeal, even construing the evidence in the light most favorable to the City, there is evidence of the City's culpability.

As stated previously, the City knew of Perkins' claim within days of the incident, and Perkins called at least a few times each week to check on the status of the investigation, but the City did not send an inspector to the site for nearly two months. This inspector did not know about Perkins' claim, did not lift the water meter lid to inspect the entire box, and did not remove the lid to preserve it for foreseeable litigation. Two and a half years later, the City sent another investigator to the scene who finally removed the lid on the water meter and found a piece of broken lid inside the box, but the City could not produce that lid because its whereabouts were unknown. On top of that, the City lost photographs taken by both investigators. The City's culpability was further enhanced because it refused to acknowledge that it lost the lid Spencer removed in 2014. In April 2015, the City informed Perkins that it was "willing to make the requested meter lid available to Plaintiff for on-site testing and inspection at a mutually agreeable time, while Defendant's attorney and/or representative [was] present." However, on June 6, 2019, the City's 30 (b) (6) representative admitted that the City could not produce the water meter lid Spencer removed.

It is axiomatic that a party should only be penalized for losing or destroying relevant evidence if it was wrong to do so. See *Phillips*, 297 Ga. at 398-399 (II); *Johnson v. Riverdale Anesthesia Assocs.*, 249 Ga. App. 152, 155 (2) (547 SE2d 347) (2001), aff'd on other grounds in *Johnson v. Riverdale Anesthesia Assocs.*, 275 Ga. 240 (563 SE2d 431) (2002). The City's failure to preserve the original water meter lid immediately after Perkins filed a claim and litigation was foreseeable may not have been malicious, but it was wrong. Moreover, the City's loss of two sets of photographs taken by investigators, as well as its misplacement or loss of the lid Spencer removed in 2014, may not have been malicious, but it also was wrong. This pattern of consistently wrong actions demonstrated the City's culpability and severely prejudiced Perkins' ability to prove his case. Weighing the degree of the City's culpability against the prejudice to Perkins, see *Campbell*, 258 Ga. App. at 770, we conclude that the trial court did not abuse its discretion in determining that the City's wrongful actions — in conjunction with the other four factors militating "so strongly in favor of imposing exclusionary sanctions" — supported the imposition of harsh spoliation sanctions despite the court's finding that the City did not act in bad faith.

See *AMLI*, 293 Ga. App. at 363-364 (1) (a) (iii); see also *Wal-Mart Stores v. Lee*, 290 Ga. App. 541, 546 (1) (659 SE2d 905) (2008).

(v) Finally, we turn to the last factor: whether there was a potential for abuse if expert testimony about the lost or destroyed evidence was not excluded. "The spoliation of critical evidence — for whatever reason — may result in trial by ambush[, a]nd permitting parties to engage in such a tactic undermines the integrity of the judicial process." (Citation and punctuation omitted.) *Campbell*, 258 Ga. App. at 771. Here, the trial court found that expert testimony regarding the 2014 lid Spencer removed should be excluded because the City refused to concede that the lid was the same as the one in place on September 3, 2011, and evidence in the record suggested that it was not the same lid. In fact, the parties agreed that the actual lid could not be identified. As the trial court stated, "[w]ithout the benefit of examining the actual lid, experts would be relegated to relying on mere conjecture and guesswork regarding the size, condition, and fit of the meter lid" at the time of Perkins' fall. The City does not challenge the trial court's findings as to the potential for abuse.

(vi) According to the City, a rebuttable presumption that the lid present at the time of the accident was the smaller-sized lid would have been appropriate under the

circumstances of this case. The trial court, however, considered this lesser sanction and concluded that a rebuttable presumption was "not an option because the only evidence that the City ha[d] available to rebut the presumption would be based on speculation and conjecture." Compare *Cowan Systems*, 361 Ga. App. at 827-828 ("Nothing in the court's order shows that it considered a lesser sanction and found it insufficient under these facts."). The court also concluded that dismissal was not an appropriate option because the City exhibited negligence and not bad faith. However, because the City wrongfully failed to preserve critical evidence under its control when it had a duty to do so, and the prejudice to Perkins was incurable, the court "crafted a viable remedy" that it felt was "appropriate and fair" under the circumstances in this case.

Applying the necessarily deferential standard of review given the trial court's "wide latitude to fashion sanctions on a case-by-case basis, considering what is appropriate and fair under the circumstances[,]" see *Cowan Systems*, 361 Ga. App. at 825-826 (citation and punctuation omitted), we find that the trial court did not abuse its discretion in fashioning the sanctions it imposed in this case. See *R.A. Siegel Co. v. Bowen*, 246 Ga. App. 177, 182 (2) (539 SE2d 873) (2000) (concluding that "[t]he

spoliator of the evidence should not benefit from its destruction"). We note that the trial court specifically permitted the City to defend on the issues of comparative fault, causation, and damages.

2. The City asserts that the trial court erred in admitting evidence at trial of alleged problems regarding other water meter lids and other water meters. "A trial court's decision regarding the admission or exclusion of evidence is reviewed for an abuse of discretion." (Citation and punctuation omitted.) *Koules v. SP5 Atlantic Retail Ventures*, 330 Ga. App. 282, 285 (2) (767 SE2d 40) (2014).

> This is so because trial courts, unlike appellate courts, are familiar with a piece of litigation from its inception, hear first-hand the arguments of counsel, and consider disputed evidence within the context of an entire proceeding. Hence, it is only natural that an appellate court should defer to the trial court with regard to the admission of evidence, unless the lower court's decision is so flawed as to constitute an abuse of discretion.

(Citation and punctuation omitted.) *Stovall v. DaimlerChrysler Motors Corp.*, 270 Ga. App. 791, 791-792 (608 SE2d 245) (2004). We find no abuse of the trial court's discretion in this case.

Prior to trial, the City filed 20 motions in limine, including a motion to exclude any and all evidence of other injuries and other water meter claims of injuries against

the City, and a motion to exclude any and all evidence of other lawsuits against the City. Perkins argued that evidence of other injuries and lawsuits was relevant to foreseeability, knowledge, the amount of risk, the breach of the standard of care, the degree of breach, and comparative fault of the City vis-a-vis Perkins and K&V, the installer of the water meters. Specifically, Perkins sought to introduce claims of other individuals who stepped on water meter lids, which then flipped and injured them. He also sought to introduce Burns' statements and admissions that the City was well aware that it had several thousand ill-fitting water meter lids that created hazardous meter conditions in the city. Perkins further sought to introduce the City's responses to his requests for admissions, which listed similar claims where individuals stepped on water meter lids that did not stay in place.

At the motion in limine hearing, the trial court ruled that similar claims could be introduced into evidence since the City asserted that K&V was partly responsible and the jury would have to apportion liability between the City and K&v. However, the court ruled that similar claims evidence would not be admissible if the City chose not to bring up K&V liability. The court also ruled that Perkins could introduce

Burns' testimony regarding the City's knowledge. The trial court's subsequent written order stated as follows:

> The Court will allow Gwendolyn Burns' admission as well as admissions of Defendant through its responses to Request for Admissions. However, since Defendant has elected not to seek apportionment as to K&V, the Court will not allow evidence of other instances of ill-fitting lids in the City flipping and causing injury to others.

The verdict form did not list K&V or ask the jury to apportion fault between the City and K&v.

During Perkins' opening statement, his attorney discussed the City's knowledge of other ill-fitting lids throughout the city. Additionally, Perkins called several witnesses and questioned them regarding the City's knowledge of other ill-fitting lids throughout the city, and the City did not object to these questions. Perkins also introduced a postcard sent to customers asking them to report water meter lid problems and phone logs of customer reports about water meter lid issues, with no objection by the City.

After the trial concluded, the City filed a motion for judgment notwithstanding the verdict or motion for new trial, arguing, among other things, that "the City was unfairly prejudiced by the introduction of evidence relating to other ill-fitting water meter lids throughout the City." Specifically, the City maintained:

> If the City had known that Plaintiff was going to introduce such evidence, in direct contradiction to the Court's express instructions during the Motions in Limine hearing, it would never ha[ve] withdrawn its Notice of Apportionment against K&V. The City relied, to its detriment, on this Court's ruling during the Motions in Limine hearing, and as such, was irreparably harmed and prejudiced during trial when such evidence was admitted, over objection.

The City's argument at the motion for new trial hearing was similar: "[T]he Court's allowing evidence of other ill-fitting water meter lids throughout the city, when it said in February 2022 at the motions hearing that if we withdrew that apportionment it would not, it was incredibly prejudicial, highly prejudicial, Your Honor. And as such, we move the Court for a JNOV, or a new trial without any mention of the other ill-fitting water meter lids throughout the city."

The trial court denied the City's motion with respect to the admission of evidence of other ill-fitting water meter lids throughout the city, finding that "such

evidence [was highly] relevant to show that [t]he City had superior knowledge of the hazard encountered by the plaintiff." (Citation and punctuation omitted.) The court also found such evidence relevant to show notice to the City for Perkins' nuisance claim.

On appeal, the City maintains for the first time that the trial court abused its discretion in allowing into evidence alleged issues with other water meters and lids because Perkins failed to demonstrate that the other water meters and/or lids were substantially similar to the alleged meter and lid at issue in this case. Importantly, however, the City did not object on this ground to either the introduction of the evidence or argument regarding the evidence during trial.[6] It is well settled that a claim of error is waived without a contemporaneous objection. See *Williams v. Harvey*, 311 Ga. 439, 447 (1) (a) (858 SE2d 479) (2021) ("[A] contemporaneous objection must be made at the time an alleged violation of a ruled-upon motion in limine occurs at trial — whether during the presentation of evidence or in opening statements or

---

[6] The substantially similar argument was discussed during the motion in limine, but the City did not lodge any specific objection on this ground to the trial court's motion in limine rulings, and, as stated above, the City did not object to counsel's argument or the admission of this evidence on this ground at trial.

arguments made by counsel before the factfinder — in order to preserve the error for appeal.").

> Although a party does not waive an error by failing to object to admission of evidence after a motion in limine is denied, this rule cannot be invoked to preserve a different, if perhaps related, error. To allow such a procedure would deprive the trial court of the opportunity to consider the error alleged, and take corrective action, if necessary.

(Citation and punctuation omitted.) Id. at 452 (2). Absent an objection, we review the challenged evidence only for plain error, see *Chrysler Group v. Walden*, 303 Ga. 358, 369 (II) (B) (812 SE2d 244) (2018), and the City neither asserts nor argues that it met the plain error standard of review.

In addition, the City did not raise this particular argument regarding substantially similar incidents during the hearing on its motion for new trial. It is axiomatic that "[a]n argument not raised in the trial court is waived and cannot be raised for the first time on appeal." *Locke's Graphic & Vinyl Signs v. Citicorp Vendor Finance*, 285 Ga. App. 826, 828 (2) (a) (648 SE2d 156) (2007); see also *Smith v. Laymon*, 279 Ga. 823, 824 (2) (620 SE2d 796) (2005) (holding that "[i]ssues never raised at trial will not be considered for the first time on appeal") (citation and

punctuation omitted). Because the City's enumeration of error is predicated on legal arguments that were not presented to the trial court, it has waived consideration of this ground for the first time on appeal.

Notwithstanding the City's waiver of this argument, we conclude that the argument has no merit for several reasons. First of all, the City mischaracterizes the evidence admitted at trial as other similar incident evidence. Although "[s]imilar acts or omissions on other and different occasions are not generally admissible to prove like acts or omissions at a different time or place[,] . . . the purpose of the [unobjected to] testimony in question was not to prove prior incidents" that the water meter lid Perkins stepped on was defective or that Perkins' injury was caused by a defect in the water meter lid; rather, the evidence was introduced to show that the City "had received notice and had knowledge of" a problem with ill-fitting lids throughout the city. *Skil Corp. v. Lugsdin*, 168 Ga. App. 754, 754-755 (1) (309 SE2d 921) (1983) (finding evidence that company had notice and general knowledge that its product had a problem relevant and admissible to show knowledge of a dangerous condition or defect). In fact, the witnesses "did not testify as to the particular facts, allegations, or outcomes of any of the individual incidents reported, but only as to [the City's] receipt

of complaints" having to do with ill-fitting City water meter lids, which was relevant testimony. Id. at 755 (1).

Second, the City specifically asserts on appeal that "[t]he trial court abused its discretion in denying in part the City's motion in limine and allowing [Perkins] to introduce evidence of purported problems with other water meters because [Perkins] failed to demonstrate they were substantially similar to the alleged meter and accident at issue." However, the City's motions in limine did *not* address general knowledge by the City of water meter lid problems. The motions specifically referenced "other civil lawsuits, claims, or administrative proceedings against" the City, "any and all evidence of other injuries and other water meter claims of injuries against the City," and "any and all evidence of other lawsuits against the City." The evidence Perkins introduced at trial did not involve claims, injuries, or other lawsuits against the City, which was the evidence the City sought to exclude; rather, it involved the City's general knowledge that thousands of water meters had ill-fitting lids. Accordingly, the City mischaracterizes the admission of this evidence as a denial of its motion in limine.

Finally, the City's knowledge regarding problems with ill-fitting lids was, as the trial court stated, "highly relevant" to demonstrate that the City had superior

43

knowledge of the hazard Perkins encountered and to prove comparative fault. "The fundamental basis for an owner or occupier's liability in premises-liability cases is the owner's superior knowledge of the hazard encountered by the plaintiff." (Citation and punctuation omitted.) *Sinyard v. Ga. Power Co.*, 363 Ga. App. 195, 205 (2) (a) (871 SE2d 45) (2022).

Here, even if the City did not waive its argument, evidence of the City's general knowledge regarding ill-fitting water meter lids throughout the city was relevant and introduced for a proper purpose. Accordingly, the trial court did not abuse its discretion in allowing the introduction of this testimony.

*Case No. A24A0696*

3. In a cross-appeal, Perkins asserts that the trial court erred in granting a judgment notwithstanding the verdict and overturning the jury's award of OCGA § 13-6-11 attorney fees to Perkins. Perkins does not dispute that he failed to specially plead or pray a claim for attorney fees, as required by OCGA § 13-6-11, in either his complaint filed in 2013 or his amended complaint filed in 2020. He likewise does not dispute that he could have amended his pleading without leave of court prior to entry of the pretrial order. See OCGA § 9-11-15 (a) ("A party may amend his pleading as a

matter of course and without leave of court at any time before the entry of a pretrial order."). Instead, Perkins argues that he sufficiently pleaded a claim for OCGA § 13-6-11 attorney fees for the first time in the pretrial order, which was subsequently signed by the trial court. Given the circumstances of this case, we disagree.

"Where, as here, a case turns on statutory interpretation and resolution of questions of law, we apply a de novo standard of review." *Stockton v. Shadwick*, 362 Ga. App. 779, 780 (870 SE2d 104) (2022). That said, the relevant statute at issue here is OCGA § 13-6-11, which provides as follows:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

This Court previously has held that "[a]wards under OCGA § 13-6-11 must be specifically pleaded and prayed for *in the complaint*." (Emphasis supplied.) *Dept. of Transp. v. Ga. Television Co.*, 244 Ga. App. 750, 751 (1) (536 SE2d 773) (2000); see also *Williams v. Binion*, 227 Ga. App. 893, 894 (1) (490 SE2d 217) (1997). It is

undisputed that Perkins did not do so here, instead first raising the issue in the pretrial order more than eight years after he filed his complaint.

While Perkins correctly points out that a pretrial order generally supersedes all prior pleadings, see *Jacobsen v. Muller*, 181 Ga. App. 382, 384 (4) (352 SE2d 604) (1986), the fact that the pretrial order in this case included a claim for fees under OCGA § 13-6-11 does not require a different result. Stated purposes of a pretrial order include "[t]he simplification of the issues" and "[t]he necessity or desirability of amendments to the pleadings[.]" OCGA § 9-11-16 (a) (1), (2). Indeed, "[t]wo of the principal benefits of a pre-trial order are the simplification of the issues and the *limiting of the issues* for trial." (Emphasis supplied.) *Echols v. Bridges*, 239 Ga. 25, 27 (235 SE2d 535) (1977). As this Court has stated, "[t]he pre-trial order is an indispensable mechanism in the trial court. Its purpose is to determine *which of the claims pleaded* will actually be tried. The *claims*, issues, and evidence are limited by the order and the course of the action is thereby *narrowed* to expedite the proceeding." (Citation and punctuation omitted; emphasis supplied and in original.) *Williams v. Safeway Ins. Co.*, 223 Ga. App. 93, 94 (476 SE2d 850) (1996). The Supreme Court of Georgia likewise has stated the purpose of a pretrial order:

> The pretrial order has been likened to a rudder to the ship of litigation, and is intended to *limit the claims*, contentions, defenses, and evidence that will be submitted to the jury, thereby narrowing the course of the action, and expediting its resolution. As such, it is an indispensable tool for the efficient disposition of civil litigation matters.

(Citations and punctuation omitted; emphasis supplied.) *Dept. of Human Resources v. Phillips*, 268 Ga. 316, 318 (1) (486 SE2d 851) (1997). See also *DeBerry v. Knowles*, 172 Ga. App. 101, 105 (321 SE2d 824) (1984) (noting that "[t]he pretrial order specifically limited the issues to those raised by the pleadings as supported by the evidence").

Perkins has presented no statute or case law allowing a party to *raise* for the first time, rather than *limit*, causes of action and issues in a pretrial order. In fact, our State's principle of notice pleading would demand the opposite. See generally *Dehco, Inc. v. Bd. of Regents of the Univ. System of Ga.*, 350 Ga. App. 760, 762 (1) (830 SE2d 333) (2019) ("Under Georgia's Civil Practice Act, a complaint must contain a short and plain statement of the claims showing that the pleader is entitled to relief, and must include enough detail to afford the defendant fair notice of the nature of the claim and a fair opportunity to frame a responsive pleading.") (citations and punctuation omitted); *TechBios, Inc. v. Champagne*, 301 Ga. App. 592, 593 (688 SE2d

378) (2009) ("It is well established that a plaintiff is not required to plead in the complaint facts sufficient to set out each element of a cause of action so long as it puts the opposing party on reasonable notice of the issues that must be defended against."); cf. *Branch Banking & Trust Co. v. Morrisroe*, 323 Ga. App. 248, n. 1 (746 SE2d 859) (2013) (reiterating that a claim asserted in a pleading is abandoned if omitted from the pretrial order). Here, it is undisputed that Perkins did not specially plead OCGA § 13-6-11 attorney fees — or even mention bad faith, stubborn litigiousness, or unnecessary trouble and expense — and make a prayer therefor in his complaint or amended complaint. As such, the City was not put on notice that Perkins might be seeking attorney fees against the City for acting in bad faith, being stubbornly litigious, or causing unnecessary trouble and expense. See generally *Callicott v. Scott*, 357 Ga. App. 780, 787 (1) (a) (849 SE2d 547) (2020) (finding that a new claim made for the first time in response to a motion for summary judgment did not satisfy the liberal requirements of the Georgia Civil Practice Act for notice pleading because the complaint was not amended to add the new claim and the defendants were not given reasonable notice of the claim or an opportunity to frame a responsive pleading to the claim). Neither was the City permitted an opportunity to conduct discovery on the

new claim because discovery ended on October 15, 2021, and Perkins did not raise this new cause of action for OCGA § 13-6-11 fees until the parties' proposed pretrial order was filed on December 17, 2021.

It is also undisputed that the City objected to Perkins first pleading a claim for attorney fees under OCGA § 13-6-11 in the pretrial order and again when Perkins attempted to introduce evidence of fees at trial. Accordingly, this is not a case where issues not raised by the pleadings are tried by express or implied consent of the parties. See *Burger King Corp. v. Garrick*, 149 Ga. App. 186, 188 (253 SE2d 852) (1979) ("Since the appellees in this case made a clear objection to the evidence of the additional claims, it cannot be said that these claims were tried with the appellee's express or implied consent. Thus, in the absence of an amendment to the pleadings, the trial court was not authorized to admit this evidence or to enter judgment for any of the claims based on it."). Perkins had an opportunity to amend his complaint after the City objected to the addition of this new claim and prior to the court's entry of the pretrial order, yet he did not do so. See OCGA § 9-11-15 (a); *Preferred Risk Ins. Co. v. Boykin*, 174 Ga. App. 269, 275 (7) (329 SE2d 900) (1985) (finding that party should

49

have moved to amend his pleadings to add a claim for OCGA § 13-6-11 fees at the time the opposing party raised its objection).

Although Perkins argues that "[t]he trial court either implicitly overruled the City's objection when it signed and entered the Pretrial Order with the pleaded 13-6-11 claim included as an issue for jury determination or it implicitly made the necessary findings to overrule the objection when it ultimately submitted that claim to the jury[,]" the record shows otherwise. As the trial court stated in its order on the City's motion for judgment notwithstanding the verdict:

> The Court reserved ruling on that issue but allowed the Plaintiff to present whatever evidence he had on the issue of attorneys' fees. The Court indicated that it would submit the issue to the jury because in the event that the Court committed error for excluding the attorneys' fees issue at that juncture, it would have to retry the entire case unnecessarily. The Court announced that it would rule on the attorneys' fees issue after the jury returned its verdict in the event that [t]he City filed a Motion for Judgment Notwithstanding the Verdict. The Court presented a special verdict form which separated the compensatory damages from the attorneys' fees.

Indeed, when Perkins attempted to introduce evidence of attorney fees on the fifth day of trial, the City objected, and the trial court ultimately announced as follows:

I believe that I am correct in my thinking that because it was not in the complaint or in the amended complaint, the request for attorney's fees specifically stating that you're doing it under 13-6-11, that it should not be presented to the jury. But because it's in the pretrial order, and there are so many different cases going one way or the other about it, even though you-all — the defendants did object to 13-6-11, saying it was not in the complaint — what I think I'm going to do, just so I don't have to try your case again, I'm going to submit it to the jury on a separate interrogatory so that if I am wrong in my thinking, then the Court of Appeals — because I'm sure you-all will take it up there — they can write it off, or I can do a JNOV on it, okay? But we'll have a number. If they — if you believe that you're entitled to something, you won't have to try this again, okay?

We agree with the trial court that Perkins did not properly plead an OCGA § 13-6-11 claim in his complaint or amended complaint and, under the circumstances of this case, was precluded from raising the new claim in the pretrial order. A trial court is not authorized to admit evidence or enter judgment for new causes of action included for the first time in a pretrial order and not raised in the pleadings where the opposing party makes a clear objection in the pretrial order and continuing objections thereafter at trial to the admission of evidence supporting the new claims. "Our holding here is consistent with the general rule that, in our legal system, parties are

responsible for their own attorney fees and that an award of fees is an exception to this rule. [Perkins'] recovery of attorney fees under OCGA § 13-6-11 is precluded by [his] failure to specifically plead and pray for them in the petition." *Dept. of Transp.*, 244 Ga. App. at 752-753 (1). We find no error in the trial court's legal decision to overturn the jury's OCGA § 13-6-11 fee award in this case.[7]

*Judgment affirmed. Doyle, P. J., and Watkins, J., concur.*

---

[7] In light of our decision affirming the trial court's order granting the City's judgment notwithstanding the verdict and overturning the OCGA § 13-6-11 attorney fees awarded to Perkins based on his failure to properly plead this claim, we need not address the trial court's alternative reason for overturning the award based on inadequate evidence to support the fees.